# In the United States Court of Appeals for the Fifth Circuit

STUDENTS ENGAGED IN ADVANCING TEXAS; M. F., BY AND THROUGH NEXT FRIEND VANESSA FERNANDEZ; Z. B., BY AND THROUGH NEXT FRIEND S.B.,

*Plaintiffs–Appellees*,

v.

KEN PAXTON, IN HIS OFFICIAL CAPACITY AS THE TEXAS ATTORNEY GENERAL,

*Defendant–Appellant.*

*consolidated with*

COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION,

*Plaintiff–Appellee*,

v.

KEN PAXTON, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF TEXAS,

*Defendant–Appellant.*

On Appeal from the United States District Court
for the Western District of Texas, Austin Division

## APPELLANT'S OPPOSED MOTION TO STAY PRELIMINARY INJUNCTIONS PENDING APPEAL

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
(512) 936-1700

WILLIAM R. PETERSON
Solicitor General

JEFFREY A. STEPHENS
Assistant Solicitor General
Jeff.Stephens@oag.texas.gov

*Counsel for Defendant–Appellant*

# Certificate of Interested Persons

No. 25-51073

Students Engaged in Advancing Texas; M. F., by and through next friend Vanessa Fernandez; Z. B., by and through next friend S.B.,

*Plaintiffs–Appellees,*

v.

Ken Paxton, in his official capacity as the Texas Attorney General,

*Defendant–Appellant.*

*consolidated with*

No. 26-50001

Computer & Communications Industry Association,

*Plaintiff–Appellee,*

v.

Ken Paxton, in his official capacity as Attorney General of Texas,

*Defendant–Appellant.*

Under the fourth sentence of Fifth Circuit Rule 28.2.1, appellant, as a governmental party, need not furnish a certificate of interested persons.

/s/ Jeffrey A. Stephens
Jeffrey A. Stephens
*Counsel of Record for*
*Defendant–Appellant*

i

# INTRODUCTION

Texas Senate Bill 2420, the App Store Accountability Act,[1] was enacted to build on tools already provided by mobile device application stores and developers to help parents direct and supervise children's downloads of apps and in-app purchases. The Act accomplishes these goals by requiring age verification, parental consent, and age rating and content display.

The district court enjoined SB2420. In determining that the State is unlikely to succeed on the merits, the court ignored that SB2420 regulates commercial speech and is, therefore, subject to intermediate scrutiny at most. The court wrongly held that two exceptions to the parental consent provisions required applying strict scrutiny to the entire Act. In addressing the facial challenge, the district court did not apply the strict requirements of *Moody v. NetChoice, LLC* to rigorously map a statute's constitutional and unconstitutional applications and facially enjoin a statute only if its unconstitutional applications "substantially outweigh" its constitutional applications. 603 U.S. 707, 724 (2024). The court's conclusions on vagueness and severability fare no better, and it entered a universal injunction that "falls outside the bounds of a federal court's equitable authority." *Trump v. CASA, Inc.*, 606 U.S. 831, 847 (2025).

---

[1] 89th Leg., R.S., ch. 200, Tex. Gen. Laws 385-90, codified at Tex. Bus. Com. Code ch. 121.

The State is likely to succeed in its appeal of the preliminary injunctions, and because the remaining factors for stay also favor the State, this Court should stay the preliminary injunctions pending appeal.

## BACKGROUND

In 2025, the Texas Legislature enacted SB2420 with overwhelming bipartisan support. S.J. of Tex., 89th Leg., R.S. 1326, 2888 (2025); H.J. of Tex., 89th Leg., R.S. 3721 (2025). SB2420 imposes various duties on app stores and developers related to age verification, assigning and displaying age and content ratings, parental consent for downloads and purchases by minors, and protecting personal data.

*Age verification.* SB2420 requires app stores to use a commercially reasonable method to verify the age category of an individual who creates an account with the app store. Tex. Bus. & Com. Code § 121.021(a). SB2420 defines age categories for child, younger teenager, older teenager, and adult. § 121.021(b).[2]

*Parental consent.* A minor's account with an app store must be affiliated with a parent account. § 121.022(a)-(b). Further, "the owner of an app store must obtain consent from the minor's parent or guardian through the parent account affiliated with the minor's account before allowing the minor to: (1) download a software application; (2) purchase a software application; or (3) make a purchase in or using a software application." § 121.022(d).

Section 121.052 of SB2420 requires developers to assign an age rating to each app and purchase that can be made through the app, and the developer must provide

---

[2] Unless indicated otherwise, all statutory citations are to the Texas Business & Commerce Code.

the app store with the rating and the specific content that led to the assigned rating. To obtain consent, the app store must disclose to the parent or guardian specific information in section 121.022(f)(1).

App stores must notify parents before significant changes are made to the terms of service or privacy policy of apps for which consent has been given and obtain consent for the minor's continued use of the app. *See* §§ 121.022(g), .053(a).

Parental consent is not required for a minor to download an app that "provides direct access to emergency services," including "9-1-1 emergency services," "a crisis hotline," or "an emergency assistance service that is legally available to a minor." § 121.022(h)(1). To qualify, the emergency services app must be operated by a qualifying entity, must limit data collection in specific ways, and cannot require the minor to create an account to access and use the app. *Id.* A second exception for consent applies if the app "is operated by or in partnership with" a regulated nonprofit organization that "develops, sponsors, or administers" standardized tests used for certain post-secondary education purposes. § 121.022(h)(2).

*Age rating and content display*. SB2420 requires app stores to display age ratings and other content notices for each app, which may be satisfied by an existing mechanism if an explanation of the mechanism is made available to users. *See* § 121.023.

*Age rating and content information provided to app stores*. As noted above, SB2420 requires developers to assign an age rating to each app and purchase that can be made through the app. § 121.052(a). The developer must provide the app store with the assigned rating and the specific content that led to the assigned rating. § 121.052(b).

In addition, a developer must notify the app store "before making any significant change to the terms of service or privacy policy of the software application." § 121.053(a). Significant changes are defined to include certain changes (1) to the use of personal data, (2) affecting the rating of the app or content that led to the rating, (3) adding new monetization features, or (4) that "materially change[] the functionality or user experience" of the app. § 121.053(b).

*Age category and consent verification.* A developer must use information received from an app store under section 121.024 to verify the age category of a user of an app and, if a minor, verify whether consent has been obtained under section 121.022. § 121.054.

*Additional provisions.* Additional provisions govern access to information, protection of personal data, and violations by app stores and developers. §§ 121.024, .025, .026, .055, .056.

SB2420 had an effective date of January 1, 2026. Before that date, plaintiffs filed two suits against Attorney General Paxton in the Western District of Texas and sought preliminary injunctions enjoining enforcement of SB2420.

Students Engaged in Advancing Texas (SEAT) and two minors sued in one case. SEAT claims it "represents a coalition of Texas students—from middle school to college-age—who seek to increase youth participation in policymaking, including through mobile apps." ROA.25-51073.84.

Computer & Communications Industry Association (CCIA) also sued and claims it "is a membership-based trade organization whose members operate some of the world's popular mobile app publishing services." ROA.26-50001.339.

According to CCIA, "[t]he app stores operated by CCIA members that are regulated by S.B. 2420 are: (1) Google Play; (2) the Amazon Appstore; and (3) the Apple App Store." ROA.26-50001.339. CCIA also states that its "members are also leading app developers, who create and offer popular mobile apps for download in app stores," including "email apps like Gmail, video-viewing and sharing apps like YouTube, e-book or audiobook apps like Kindle and Audible, and apps that allow users to communicate and obtain information on a wide variety of topics (e.g., IMDb, Goodreads, Twitch)." ROA.26-50001.339-340.

Plaintiffs moved for preliminary injunctions against enforcement of SB220. The district court granted the injunctions after a combined hearing. The SEAT order[3] determined that SB2420 is content-based and strict scrutiny applies, that the State likely cannot show a compelling state interest, that SB2420 would fail intermediate scrutiny, and that none of the provisions of SB2420 are severable. ROA.25-51073.670-683. The court further held that the "materially changes" provision (§ 121.053(b)(4)) is unconstitutionally vague and that SB2420 is facially invalid but did not reach an argument about prior restraint. ROA.25-51073.684-687. The court decided that the remaining preliminary injunction factors favored the SEAT Plaintiffs and enjoined the State "from taking any action to implement or enforce Tex. Bus. & Com. Code §§ 121.021, 121.022(a)-(b), 121.022(d)-(g), 121.024, 121.026(a)(3), 121.026(b), 121.053, 121.054, and 121.056(c)." ROA.25-51073.689.

---

[3] ROA.25-51073.670-689 (SEAT Dkt. 38).

The CCIA order[4] reaches the same conclusions as in SEAT, except there was no issue of prior restraint and the court also held that "[t]he portions of the Act that hold app developers and stores liable for getting age ratings wrong are impermissibly vague." ROA.26-50001.1153-1170. The district court enjoined the State "from taking any action to implement, enact, or enforce Texas S.B. 2420." ROA.26-50001.1171-1172.

The State appealed from both injunction orders and, in the district court, moved to stay the injunctions pending appeal. ROA.25-51073.701-709 (SEAT); ROA.26-50001.1183-1190 (CCIA). On May 6, 2026, the court denied the State's motions. Ex. A; Ex. B. The district court stated that the Defendant "makes the same arguments regarding the constitutionality of SB 2420 that the Court rejected in its order granting the preliminary injunction." Ex. A at 3; Ex. B at 3. The court then repeated its conclusions about the State's likelihood of success from the preliminary injunction orders. Ex. A at 3; Ex. B at 3. The court found the State had not shown it would suffer irreparable injury and that "any potential harm to the State is outweighed by the harm that would be suffered by Plaintiffs if the Act were not preliminarily enjoined." Ex. A at 3-4; Ex. B at 3-4.

---

[4] ROA.26-50001.1153-1172 (CCIA Dkt. 65).

To stay an order pending appeal, this Court considers whether the State has made a strong showing that it is likely to succeed on the merits, whether it will suffer irreparable harm without a stay, whether plaintiffs will be substantially harmed by a stay, and the public interest. *Nken v. Holder*, 556 U.S. 418, 426 (2009).

## I. The State Is Likely to Succeed on the Merits.

Texas is likely to succeed on the merits of its appeal. Strict scrutiny does not apply to any provision of SB2420, the district court did not make the requisite findings or weigh of all unconstitutional and constitutional applications required for facial invalidity under *Moody*, the terms challenged on vagueness grounds are reasonably clear, and the district court had no power to enter a universal injunction.

### A. The orders enjoining enforcement of SB2420 erroneously applied strict scrutiny.

#### 1. SB2420 applies to commercial speech, which receives intermediate scrutiny.

The district court held that "SB 2420 is not a regulation on commercial speech" and that strict scrutiny applies to all provisions of the law. *E.g.*, ROA.26-50001.1163. But SB2420 regulates only speech that proposes a commercial transaction. *See Bd. of Trs. v. Fox*, 492 U.S. 469, 482 (1989). Commercial speech is subject to intermediate scrutiny under the framework set forth in *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557 (1980). *See Fox*, 492 U.S. at 475; *see also Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 623 (1995).

When minors download apps they are accepting terms of service, including agreements about how their data is used. ROA.26-50001.225. The child may even be

agreeing to have the information in their phone monetized by the tech companies or used to track location. ROA.26-50001.225. Minors entering contracts with app stores and developers without parental consent was the primary concern to SB2420's sponsors. *E.g.*, H.J. of Tex., 89th Leg., R.S. 3578 (2025).

Apple's and Google's app stores both present minors with terms of service and privacy or data collection policies that are accepted when downloading apps. *E.g.*, ROA.26-50001.417, 427, 670. SB2420 prevents app stores and developers from proposing or entering into these contracts with minors without parental consent by requiring age verification and parental consent before minors may download an app or make a purchase. *See* §§ 121.021, .022, .054. The age ratings and content notices for each app (which are supplied by the app developer, *id.* §§ 121.023, .052) help parents decide whether or not to consent to their minors entering into these transactions. *See, e.g.*, *Zauderer v. Off. of Disciplinary Couns.*, 471 U.S. 626, 651 (1985).

The injunction orders purport to analyze whether "the targeted advertising requirements" constitute a regulation on commercial speech. *E.g.*, ROA.26-50001.1163. SB2420 does not contain "targeted advertising requirements," and the cited portion of the State's brief does not argue otherwise.

The injunction orders state that "[t]he Act is not limited to commercial speech" and that "restrictions on what content can be bought and sold may be subject to strict scrutiny." ROA.26-50001.1163. In support, the district court cited *Brown v. Entertainment Merchants Association*, 564 U.S. 786, 789 (2011). *Brown* does not control.

In *Brown*, the only commercial transaction concerned the purchase of the violent video games, but the contracts entered into when downloading an app propose commercial transactions related to children's data and privacy rights that far exceed access to the app. The app stores and developers are proposing these contracts and conditioning access to the apps on accepting them. The app stores and developers cannot avoid reasonable regulation of minors' participation in that process simply because some of the apps may contain speech. Otherwise, any company involved in proposing a commercial transaction could argue for strict scrutiny of any regulation surrounding the transaction merely by providing access to speech as part of the transaction.[5] SB2420 is directed to commercial speech and is not subject to strict scrutiny.

The injunction orders also determine that SB2420 "specifically sought to shield minors from certain speech the State deems objectionable or harmful" and thus has a "content-based justification" that warrants strict scrutiny. ROA.26-50001.1162. A legislative concern that many of the millions of apps offered by the app stores are also particularly harmful to minors does not change the commercial speech analysis. No speech is being singled out or banned by the Legislature, which merely empowers parents. Permitting parents to protect their children by reviewing app content (and the volume of apps being downloaded) in deciding whether to consent to their children accepting the proposed contract terms does not take the regulation outside

---

[5] Consider, for example, a prohibition on usury by bookstores. That works protected by the First Amendment are the object of the sale does not exempt the transaction from ordinary regulations governing commercial transactions.

the realm of commercial speech. The provisions of SB2420 are, at most, subject to intermediate scrutiny.

The district court incorrectly concluded that "SB 2420 would fail intermediate scrutiny" because "Texas has not offered any evidence connecting the Act's goals to its methods." ROA.26-50001.1167. As in *Free Speech Coalition, Inc. v. Paxton*, the Court is equipped to make a determination that a provision of law survives intermediate scrutiny because "it 'advances important governmental interests unrelated to the suppression of free speech and does not burden substantially more speech than necessary to further those interests." 606 U.S. 461, 495-96 (2025) (quoting *Turner Broad. Sys., Inc. v. FCC*, 520 U.S. 180, 189 (1997)).

First, because the district court wrongly determined that commercial speech was not at issue it also wrongly dismissed the State's important interest in ensuring parental consent for minor children to enter into contracts involving their data and privacy. This interest falls squarely within Texas's core police powers in three areas: (1) consumer protection, (2) contract capacity, and (3) child protection. Congress' interest in "consumer privacy" was sufficient to uphold the robocall restriction in *Barr*, 591 U.S. at 622-23, and numerous cases have recognized the "legitimacy and importance of the congressional goal of protecting children from harmful materials," *Reno v. ACLU*, 521 U.S. 844, 849 (1997).

The State's interest in allowing parents the opportunity to consent to their minor children accepting terms of service and data collection agreements is undoubtedly advanced by requiring app stores and developers to verify age and to obtain parental consent. And the requirements to assign age ratings and disclose to

parents the age rating and content that led to the rating for an app allows parents to make an informed choice when deciding whether to consent for their minor child to enter into such a transaction.

These provisions of SB2420 also do not burden substantially more speech than is necessary to further those interests. Plaintiffs do not dispute that all apps require acceptance of terms of service and data collection practices. Thus, to require age verification and parental consent for minors to download or purchase an app is exactly tailored to the interest of allowing parental consent before minors enter into such transactions. And disclosing accurate information to parents about an app's rating and the content that led to the rating is sufficiently tailored to Texas' interest in allowing parents to decide whether there may be additional reasons not to consent to minor children entering into these transactions. Each provision survives intermediate scrutiny.

> **2. The district court erroneously relied on two exceptions to the parental consent provisions to apply strict scrutiny.**

Section 121.022(h) provides two exceptions to the parental consent requirements: (1) apps that provide emergency services and meet specific criteria, and (2) an app that "is operated by or in partnership with" a regulated nonprofit organization that "develops, sponsors, or administers" standardized tests used for certain post-secondary education purposes.

The injunction orders incorrectly call these provisions SB2420's "coverage definitions," which may suggest they would govern the scope of the Act as a whole,

to justify labeling the entire law "content-based" and applying strict scrutiny. *See, e.g.*, ROA.26-50001.1162.

The district court's analysis was backwards. Alleged under-inclusiveness of a law does not determine the level of scrutiny. In the regulation of commercial speech, a law need only advance the State's interests. "[U]nder intermediate scrutiny, 'the First Amendment imposes no freestanding underinclusiveness limitation' and Texas 'need not address all aspects of a problem in one fell swoop.'" *Free Speech Coalition*, 606 U.S. at 498 (quoting *TikTok Inc. v. Garland*, 604 U.S. 56, 76 (2025)). In other words, the Supreme Court does not require a government to "make progress on every front before it can make progress on any front." *United States v. Edge Broad. Co.*, 509 U.S. 418, 434 (1993); *see also Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 512 (1981) ("It does not follow from the fact that the city has concluded that some commercial interests outweigh its municipal interests in this context that it must give similar weight to all other commercial advertising."). Under intermediate scrutiny, the State could reasonably determine the law was served by exempting these categories of apps.

Moreover, the emergency services exception focuses on why the service is needed rather than what is being communicated. Notably, in *Barr v. American Association of Political Consultants, Inc.*, which dealt with a broad restriction on robocalls and a government-debt exception that the Court severed and struck down, there was also an exception for "a call made for emergency purposes." 591 U.S. 610, 615 (2020). There was no issue as to whether the emergency call exception was improper. The Fourth Circuit, which was affirmed in *Barr*, found the debt-collection

exception contrasted sharply with the emergency exemption in part because "emergency calls serve the vital purpose of protecting the safety and welfare of Americans." *Am. Ass'n of Pol. Consultants, Inc. v. FCC*, 923 F.3d 159, 170 (4th Cir. 2019), *aff'd sub nom. Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610 (2020). Given the importance of protecting health and safety, the State has a compelling interest in exempting emergency services and concluding that these exemptions serve its interests.

The exception for an app that "is operated by or in partnership with" a regulated nonprofit organization that "develops, sponsors, or administers" standardized tests is content-neutral. The exception focuses on the identify of the speaker and the need for students to be able to take tests "used for purposes of admission to or class placement in a postsecondary educational institution or a program within a postsecondary educational institution," § 121.022(h)(2), rather than the content of any speech.

Rather than reviewing these exemptions under *Central Hudson* and intermediate scrutiny, the district court erroneously relied on these exemptions to apply strict scrutiny to all of SB2420's provisions.

Moreover, if the exceptions were unconstitutional, they should be severed in accordance with the Act's severability provision and severability principles. *See* ROA.26-50001.388-389. This was the path the Supreme Court followed in *Barr*: "The text of the severability clause squarely covers the unconstitutional government-debt exception and requires that we sever it." 591 U.S. at 629. Texas

applies similar severability principles. *See, e.g.*, *Rose v. Doctors Hospital*, 801 S.W.2d 841, 844-45 (Tex. 1990).

## B. The injunction orders did not apply a proper facial invalidity analysis under *Moody*.

Even if the district court were correct that SB2420 is unconstitutional in some applications, the district court failed to apply the correct analysis for facial invalidity under *Moody*. Rather than weigh the constitutional applications of SB2420 against the unconstitutional, as *Moody* requires, the district court speculated about edge cases and concluded without systematic analysis that all of SB2420's provisions are facially invalid.

Plaintiffs "chose to litigate these cases as facial challenges, and that decision comes at a cost." *Moody*, 603 U.S. at 723. "'Claims of facial invalidity often rest on speculation' about the law's coverage and its future enforcement." *Id.* (quoting *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450 (2008). The Supreme Court "has therefore made facial challenges hard to win." *Id.*

In a facial challenge, Plaintiffs bear the burden to ensure that the court evaluates the full scope of the law's coverage, to show which of the law's applications are constitutionally permissible and which are not, *id.,* and to show that "the ratio of unlawful-to-lawful applications is . . . lopsided enough to justify the strong medicine of facial invalidation," *United States v. Hansen*, 599 U.S. 762, 784 (2023) (internal quotation omitted).

After concluding that "SB 2420 is a content-based regulation and fails strict scrutiny," the injunction orders purport to perform a *Moody* analysis for facial

invalidity. *E.g.*, ROA.26-50001.1169-1170. In a single paragraph, the district court concludes that "the requirements exclusively target speech, only a small portion of which falls outside First Amendment coverage." *E.g.*, ROA.26-50001.1170.

But even under their legal theory, Plaintiffs did not provide evidence to meet their burden to show the number of apps with content to which SB2420 could and could not be applied. *Moody*, 603 U.S. at 744. Without such evidence, it was impossible for the district court to conclude that, for each of SB2420's provisions, the unconstitutional applications substantially outweigh the constitutional ones.

The few examples of apps mentioned in the district court's injunction orders fail to provide a full review of the millions of apps available on the app stores and a basis for determining whether they might present a constitutional or unconstitutional application of any particular provision of SB2420, as required for a facial attack. Even if SB2420 were unconstitutional in some applications, Plaintiffs did not meet their burden under *Moody*, and the State is highly likely to succeed on appeal.

## C. SB2420's terms are not unconstitutionally vague.

The vagueness doctrine ensures fair notice of prohibited conduct and "minimal guidelines" to prevent arbitrary enforcement. *Kolender v. Lawson*, 461 U.S. 352, 357–58 (1983). Civil statutes, particularly those protecting minors, require only reasonable certainty, not scientific precision. *Ginsberg v. New York*, 390 U.S. 629, 643 (1968). SB2420's terms meet this standard, as they are anchored in legal precedent, statutory definitions, and references to industry practice.

*Age ratings*. Section 121.052 requires app developers to assign an age rating to each app and purchase that can be made through the app. The district court

concluded that SB2420 does not provide meaningful guidance about how to determine the age rating of an app and is vague for that reason. ROA.26-50001.1168. But section 121.022(f)(1), which requires app stores to provide certain information in obtaining parental consent, refers to the ratings and content in section 121.052, which is determined by the developer. Thus, under section 121.026(a)(2) an app store cannot "knowingly misrepresent[]" age rating or content information, but otherwise the statute contemplates reliance on information obtained from the developer. The developer, in turn, is not liable for an incorrect age rating if it "uses widely adopted industry standards to determine the rating and specific content" and "applies those standards consistently and in good faith." § 121.056(b). In light of the "good faith" defense, the district court's speculation that following existing nongovernmental standards "may not be sufficient" is incorrect. ROA.26-50001.1168.

*Significant changes*. Section 121.053 requires developers to provide notice to app stores before making significant changes to the terms of service or privacy policy of an app. A change is defined as significant if it "adds new monetization features to the software application, including … new opportunities to make a purchase in or using" the app. § 121.053(b)(3). A change is also significant if it "materially changes the functionality or user experience of the software application." § 121.053(b)(4).

The district court determined that the terms "material[] changes" and "new opportunities to make a purchase" in section 121.053(b) are unconstitutionally vague. The injunction order suggests it is unclear whether a developer may be liable, for example, by not providing notice for each new song added to Apple Music or

when a new category of content is made available, such as when Spotify added podcasts. ROA.26-50001.1169.

Other than repeating the hypotheticals, the district court does not explain what is vague about "material[] changes" or "new opportunities to make a purchase" as used in section 121.053(b), particularly in the context of updates needed for a parent to provide informed consent for a minor to continue to use an app. "Material[] changes" are not recited in the abstract; a change is significant if it "materially changes the functionality or user experience" of the app. The term "material change" is also used by courts in various contexts without the need for a specific definition. *See, e.g.*, *Pavatt v. Carpenter,* 928 F.3d 906, 932 (10th Cir. 2019) ("material change in the law"). The concept of a material change is well established, easily understood, and not vague.

The "new opportunities to make a purchase" phrase is even more straightforward, using plain and ordinary language. The phrase itself uses the term "opportunities," not "items," and additional context indicates it is a "new monetization feature[]" and relates to the terms of service or privacy policy of the app. "[P]erfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Ward v. Rock Against Racism*, 491 U.S. 781, 795 (1989).

### D. The injunction orders fail to apply the severability clause.

As discussed above regarding the two exceptions to the parental consent provisions, the Act includes a strong severability provision. ROA.26-50001.388-389. Not only are provisions, sections, subsections, sentences, clauses, phrases, and

words severable from one another, but "applications" of the provisions are also severable. ROA.26-50001.388-389; *see also Rose*, 81 S.W.2d at 845 (striking only statute's application to common law claims).

Despite the Legislature's unambiguous admonition, the district court incorrectly held that the provisions of SB2420 "cannot be severed from one another." *E.g.*, ROA.26-50001.1167. The only example given is that "the parental-consent provisions could not operate without the age-verification requirements, and requiring age-verification without parental override would not achieve the Act's ends of limiting minors' access to apps." ROA.26-50001.1167. The district court cites no authority holding that a provision cannot remain if it would not by itself achieve all the purposes of the statute once another provision is invalidated. In addition, most provisions relating to protection of personal data and age rating and content display are unaffected by the district court's constitutional analysis. As noted in *Barr*, "it is fairly unusual for the remainder of a law not to be operative." 591 U.S. at 628. The district court's failure to sever and preserve any of SB2420's provisions is an error that indicates the State is likely to succeed on appeal.

### E. At a minimum, the district court erred by entering universal injunctions.

The district court's remedy exceeded what was necessary to redress Plaintiffs' injuries and thus what was permissible under the law. Its orders bar Defendant from enforcing SB2420 against anyone, not just the SEAT plaintiffs or members of CCIA (who must necessarily be identified to determine the scope of the injunction). The

injunctions thus operate as universal preliminary injunctions, forbidding the State from applying the statute at least to countless app developers.

Such relief "falls outside the bounds of a federal court's equitable authority." *CASA*, 606 U.S. at 847. At a minimum, on appeal this Court will need to vacate the injunctions "to the extent that [they are] broader than necessary to provide complete relief to each plaintiff with standing to sue." *Id.* at 861.

## II.  The Remaining Factors Favor a Stay.

The remaining stay factors also all favor the State. "When a statute is enjoined, the State necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws." *Veasey v. Abbott*, 870 F.3d 387, 391 (5th Cir. 2017) (per curiam).

Where, as here, an injunction affects a State, the balance of equities and public interest factors merge. *See*, *e.g.*, *Nken*, 556 U.S. at 435. The interest of the State and the public interest factors here coincide: the protection of children and granting to parents the information needed to make informed choices. *See Ginsberg*, 390 U.S. at 640 (stating the state has a strong interest in protecting children); *see also Wisconsin v. Yoder*, 406 U.S. 205, 232 (1972) (accepting a parental "fundamental right" to direct a child's upbringing).

Without SB2420, app stores are allowed to have minors download applications and make in-app purchases without giving parents accurate content information or obtaining informed parental consent. As pointed out in amicus briefs, app stores have violated existing consumer protection and child privacy laws for years, even after entering a federal consent decree. *See, e.g.,* ROA.26-50001.845-855 (Amici Curiae

Brief of The National Center on Sexual Exploitation and The Digital Childhood Institute). Parents rely on app age ratings as a benchmark when deciding which apps their children can use; without SB2420 providing enforcement of the accuracy of those ratings, the ability of Texas parents to protect their children from harm is imperiled.

Plaintiffs also will not be irreparably injured. App stores already group apps into age categories and supply information on the apps' contents to parents. ROA.26-50001.27 ("Every app store, on information and belief, engages in age-rating."). The App stores also already provide tools that enable parents to limit what apps children are able to download or make purchases in. ROA.26-50001.28-29. ("CCIA's app store members also provide voluntary tools for parents to control their children's exposure to apps and the content they contain."). SB2420 requires that the stores use "commercially reasonable" means to perform essentially the same actions that they already do as a matter of course for their business. *See* § 121.021(a). As such, little additional burden is placed on Plaintiffs, especially when compared to the harms allowed if the injunctions remain in place throughout the appeal.

## Conclusion

For these reasons, this Court should stay the preliminary injunctions pending appeal.

Respectfully submitted.

Ken Paxton
Attorney General of Texas

William R. Peterson
Solicitor General

Brent Webster
First Assistant Attorney General

/s/ Jeffrey A. Stephens
Jeffrey A. Stephens
Assistant Solicitor General
Jeff.Stephens@oag.texas.gov

*Counsel for Defendant-Appellant*

## Certificate of Conference

On May 13, 2026, counsel for Appellant conferred with counsel for Appellees, who stated that Appellees oppose the relief requested in this motion.

/s/ Jeffrey A. Stephens
JEFFREY A. STEPHENS

## Certificate of Compliance

This document complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(a) because it contains 5,035 words, excluding the parts of the brief exempted by Rule 32(f) and Fifth Circuit Rule 32.2, according to the word count of Microsoft Word. This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14-point Equity font.

/s/ Jeffrey A. Stephens
JEFFREY A. STEPHENS



EXHIBIT A

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

STUDENTS ENGAGED IN ADVANCING §
TEXAS, et al, §
§
§
Plaintiffs, §
§
§
v. §                                              1:25-CV-1662-RP
§
§
KEN PAXTON, *in his official* §
*capacity as the Texas Attorney General,* §
§
§
Defendant. §

**ORDER**

Before the Court is Defendant Ken Paxton's ("Paxton") Opposed Motion to Stay

Preliminary Injunction Pending Appeal.[1] (Dkt. 42). Plaintiffs Students Engaged in Advancing Texas,

M.F., and Z.B. ("Plaintiffs") filed a response in opposition, (Dkt. 46), and Paxton filed a reply in

support of his motion, (Dkt. 47). Having reviewed the parties' briefing, the facts, and relevant law,

the Court will deny Paxton's motion.

**I. BACKGROUND**

On December 23, 2025, this Court preliminary enjoined Paxton from enforcing the Texas

App Store Accountability Act, Senate Bill 2420, Tex. Bus. & Com. Code § 121.001 et seq. ("SB

2420" or the "Act"). (PI Order, Dkt. 38). SB 2420 imposes age verification, parental verification,

parental consent, and compelled speech on app stores and app developers. It restricts access to a

vast universe of speech by requiring Texans to prove their age before downloading a mobile app or

accessing paid content within those apps and requires minors to obtain parental consent. In its

---

[1] The motion was originally filed on CM/ECF as unopposed, (Dkt. 41), and Paxton refiled the motion to
change the designation from unopposed to opposed, (Dkt. 42). The Court will moot the misfiled motion.
Additionally, Paxton later filed a motion to expedite the Court's ruling on its motion to stay. (Dkt. 49). In light
of the Court's Order today, the Court will moot Paxton's request for expedited review.

preliminary injunction order, the Court found that Plaintiffs, as youth impacted by the law, have standing to bring claims against Paxton, (*id.* at 7–8), and that, applying strict scrutiny, SB 2420 is likely unconstitutional, (*id.* at 9–14). After the Court preliminarily enjoined the Act, Paxton filed an interlocutory appeal to the Fifth Circuit Court of Appeals, challenging this Court's ruling. (Dkt. 39).

After filing his interlocutory appeal, Paxton filed his motion to stay the preliminary injunction during the pendency of his interlocutory appeal. (Dkt. 42). In his motion to stay, Paxton argues that the State is likely to succeed on the merits because (1) SB 2420 does not "ban[] any material nor prevent[] any person . . . from using any app;" (2) SB 2420 does not directly implicate free speech rights under the First Amendment; (3) SB 2420 is not a content-based restriction on speech; and (4) intermediate scrutiny applies. (*Id.* at 3–4). Paxton additionally contends that the State and the public interest are irreparably harmed by the injunction, (*id.* at 4–5), and Plaintiffs will not be irreparably harmed without an injunction, (*id.* at 6–7).

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 23(f), "[a]n appeal does not stay proceedings in the district court unless the district judge or the court of appeals so orders." Fed. R. Civ. P. 23(f). A court considers four factors in deciding whether to grant a stay pending appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Planned Parenthood of Greater Texas Surgical Health Servs. v. Abbott*, 734 F.3d 406, 410 (5th Cir. 2013) (quoting *Nken v. Holder*, 556 U.S. 418, 425–26 (2009)).

## III. DISCUSSION

Applying the *Nken* factors, the Court finds that all four factors weigh in favor of denying the stay. First, Paxton has not made a strong showing that he will succeed on the merits. In less than two

pages of briefing, Paxton makes the same arguments regarding the constitutionality of SB 2420 that the Court rejected in its order granting the preliminary injunction. (Stay Mtn., Dkt. 42, at 3–4). Paxton continues to claim that SB 2420 is not a content-based restriction on speech and "cover[s] all apps regardless of their content." (*Id.* at 4). To the contrary, SB 2420's coverage definition excludes certain apps from restrictions like emergency services apps and standardized test apps, showing that the Act singles out specific subject matter for preferential treatment and is not content neutral. (PI Order, Dkt. 38, at 9). Plus, at the preliminary injunction hearing, the Court observed that the State repeatedly described the Act as having a content-based purpose of preventing minors from accessing addictive and harmful content. (Minute Entry for PI hearing, Dkt. 37). Finally, despite Paxton's concessions about the Act's content-based purpose, Paxton still argues that intermediate scrutiny applies. (Stay Mtn., Dkt. 42, at 4). While the Court concluded that strict scrutiny applies, (PI Order, Dkt. 38, at 9–11), the Court also found that SB 2420 would fail intermediate scrutiny because the State offered no evidence connecting the Act's goals to its methods, (*id.* at 14). In any event, Paxton does not explain how SB 2420 would survive intermediate scrutiny, much less make a strong showing of success on this argument. On the first *Nken* factor, Paxton's reliance on arguments that the Court rejected at the preliminary injunction stage does not display a strong likelihood of success.

To the second factor, Paxton makes no showing that the State faces irreparable injury—even setting aside Paxton's month-long delay in requesting an emergency stay. Paxton argues that the injunction causes irreparable harm because "S.B. 2420 impacts truthful commercial representations, valid contract formation, and parental authorization in the purchase of apps," topics which fall under Texas's police powers. (Stay Mot., Dkt. 42, at 5). But Paxton cites no authority to support the notion that Texas' inability to enforce SB 2420 while the lawsuit proceeds constitutes irreparable injury to Texas.

To the third factor, any potential harm to the State is outweighed by the harm that would be suffered by Plaintiffs if the Act were not preliminarily enjoined. At risk are Plaintiffs' constitutional rights to "display and facilitate vast amounts of lawful content and core protected content" and "access lawful content," (Resp., Dkt. 46, at 10). Fourth, the public interest favors denial. Keeping an unconstitutional law enjoined is "always in the public interest." *Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013). That is especially true for "injunctions protecting First Amendment freedoms." *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 298 (5th Cir. 2012). Paxton counters that the State wants to give parents tools to protect their children online, which is in the public interest, (Stay Mtn., Dkt. 42, at 5), but Texas has other ways it could advance that interest. For example, Texas can enforce its existing laws; as this Court recognized, "Texas has existing laws requiring age-verification for digital services providers containing one-third or more sexual material harmful to minors." (PI Order, Dkt. 38, at 12). Texas is also free to regulate this area by passing laws and regulations that comply with the First Amendment. In sum, Paxton fails to show that its interest in immediately enforcing SB 2420 overrides the public interest in protecting the constitutional right to free speech.

In conclusion, all four factors weigh against a stay. Therefore, the Court will deny Paxton's request for a stay pending appeal and maintain the status quo.

## IV. CONCLUSION

For these reasons, **IT IS ORDERED** that Paxton's Opposed Motion to Stay Preliminary Injunction Pending Appeal, (Dkt. 42), is **DENIED**.

**IT IS FURTHER ORDERED** that Paxton's Unopposed Motion to Stay Preliminary Injunction Pending Appeal, (Dkt. 41), is **MOOT**.

4

**IT IS FINALLY ORDERED** that Paxton's Motion for Expedited Ruling, (Dkt. 49), is

**MOOT**.


**SIGNED** on May 6, 2026.


_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE



# Exhibit B

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION, | § § § | |
| Plaintiff, | § § § | |
| v. | § § | 1:25-CV-1660-RP |
| KEN PAXTON, *in his official capacity as the Texas Attorney General*, | § § § § | |
| Defendant. | § § | |

**ORDER**

Before the Court is Defendant Ken Paxton's ("Paxton") Opposed Motion to Stay Preliminary Injunction Pending Appeal.[1] (Dkt. 69). Plaintiff Computer & Communications Industry Association ("CCIA") filed a response in opposition, (Dkt. 73), and Paxton filed a reply in support of his motion, (Dkt. 74). Having reviewed the parties' briefing, the facts, and relevant law, the Court will deny Paxton's motion.

**I. BACKGROUND**

On December 23, 2025, this Court preliminary enjoined Paxton from enforcing the Texas App Store Accountability Act, Senate Bill 2420, Tex. Bus. & Com. Code § 121.001 et seq. ("SB 2420" or the "Act"). (PI Order, Dkt. 65). SB 2420 imposes age verification, parental verification, parental consent, and compelled speech on app stores and app developers. It restricts access to a vast universe of speech by requiring Texans to prove their age before downloading a mobile app or accessing paid content within those apps and requires minors to obtain parental consent. In its

---

[1] The motion was originally filed on CM/ECF as unopposed, (Dkt. 68), and Paxton refiled the motion to change the designation from unopposed to opposed, (Dkt. 69). The Court will moot the misfiled motion. Additionally, Paxton later filed a motion to expedite the Court's ruling on its motion to stay. (Dkt. 75). In light of the Court's Order today, the Court will moot Paxton's request for expedited review.

preliminary injunction order, the Court found that CCIA has associational standing to bring its claims against Paxton, (*id.* at 8–9), and that, applying strict scrutiny, SB 2420 is likely unconstitutional, (*id.* at 9–19). After the Court preliminarily enjoined the Act, Paxton filed an interlocutory appeal to the Fifth Circuit Court of Appeals, challenging this Court's ruling. (Dkt. 66).

After filing his interlocutory appeal, Paxton filed his motion to stay the preliminary injunction during the pendency of his interlocutory appeal. (Dkt. 69). In his motion to stay, Paxton argues that the State is likely to succeed on the merits because (1) SB 2420 does not "ban[] any material nor prevent[] any person . . . from using any app;" (2) SB 2420 does not directly implicate free speech rights under the First Amendment; (3) SB 2420 is not a content-based restriction on speech; and (4) intermediate scrutiny applies. (*Id.* at 3–5). Paxton additionally contends that the State and the public interest are irreparably harmed by the injunction, (*id.* at 5–6), and CCIA will not be irreparably harmed without an injunction, (*id.* at 6–7).

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 23(f), "[a]n appeal does not stay proceedings in the district court unless the district judge or the court of appeals so orders." Fed. R. Civ. P. 23(f). A court considers four factors in deciding whether to grant a stay pending appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Planned Parenthood of Greater Texas Surgical Health Servs. v. Abbott*, 734 F.3d 406, 410 (5th Cir. 2013) (quoting *Nken v. Holder*, 556 U.S. 418, 425–26 (2009)).

## III. DISCUSSION

Applying the *Nken* factors, the Court finds that all four factors weigh in favor of denying the stay. First, Paxton has not made a strong showing that he will succeed on the merits. In less than two

pages of briefing, Paxton makes the same arguments regarding the constitutionality of SB 2420 that the Court rejected in its order granting the preliminary injunction. (Stay Mtn., Dkt. 69, at 3–5). Paxton continues to claim that SB 2420 is not a content-based restriction on speech and "cover[s] all apps regardless of their content." (*Id.* at 4). To the contrary, SB 2420's coverage definition excludes certain apps from restrictions like emergency services apps and standardized test apps, showing that the Act singles out specific subject matter for preferential treatment and is not content neutral. (PI Order, Dkt. 65, at 10). Plus, at the preliminary injunction hearing, the Court observed that the State repeatedly described the Act as having a content-based purpose of "preventing minors from accessing addictive and harmful content." (Minute Entry for PI hearing, Dkt.64). Finally, despite Paxton's concessions about the Act's content-based purpose, Paxton still argues that intermediate scrutiny applies. (Stay Mtn., Dkt. 69, at 4). While the Court concluded that strict scrutiny applies, (PI Order, Dkt. 65, at 9–11), the Court also found that SB 2420 would fail intermediate scrutiny because the State offered no evidence connecting the Act's goals to its methods, (*id.* at 14–15). In any event, Paxton does not explain how SB 2420 would survive intermediate scrutiny, much less make a strong showing of success on this argument. On the first *Nken* factor, Paxton's reliance on arguments that the Court rejected at the preliminary injunction stage does not display a strong likelihood of success.

To the second factor, Paxton makes no showing that the State faces irreparable injury—even setting aside Paxton's month-long delay in requesting an emergency stay. Paxton argues that the injunction causes irreparable harm because "S.B. 2420 impacts truthful commercial representations, valid contract formation, and parental authorization in the purchase of apps," topics which fall under Texas's police powers. (Stay Mot., Dkt. 69, at 5). But Paxton cites no authority to support the notion that Texas' inability to enforce SB 2420 while the lawsuit proceeds constitutes irreparable injury to Texas.

To the third factor, any potential harm to the State is outweighed by the harm that would be suffered by CCIA if the Act were not preliminarily enjoined. At risk are CCIA's constitutional rights to "display and facilitate vast amounts of lawful content and core protected content" and "access lawful content," (Resp., Dkt. 73, at 10), as well as CCIA members' costs of complying with the new law. Relying on a news article, Paxton asserts that SB 2420 "will not impact the app stores" because Google "has acknowledged that two similar laws have been passed in other states" and that, if and when they go into effect, Google will have to comply with those similar laws. (Stay Mtn., Dkt. 69, at 7). The assumptions Paxton makes from the article are contradicted by evidence already in the record that compliance would be costly and burdensome. (*See, e.g.*, Schruers Decl., Dkt. 15-1, at 25–27; Bye Decl., Dkt. 15-1, at 46–50). Beyond that, CCIA members' future efforts to comply with other states' similar laws does not diminish the harm arising from CCIA members having to comply at present with a Texas law that is likely unconstitutional. In other words, the article shows possible additional burdens placed on CCIA members by other laws not at issue in this case, not the absence of a burden from SB 2420 on CCIA members in Texas.

Fourth, the public interest favors denial. Keeping an unconstitutional law enjoined is "always in the public interest." *Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013). That is especially true for "injunctions protecting First Amendment freedoms." *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 298 (5th Cir. 2012). Paxton counters that the State wants to give parents tools to protect their children online, which is in the public interest, but Texas has other ways it could advance that interest. For example, Texas can enforce its existing laws; this Court recognized, "Texas has existing laws requiring age-verification for digital services providers containing one-third or more sexual material harmful to minors." (PI Order, Dkt. 65, at 18–19). Texas is also free to regulate this area by passing laws and regulations that comply with the First

Amendment. In sum, Paxton fails to show that its interest in immediately enforcing SB 2420 overrides the public interest in protecting the constitutional right to free speech.

In conclusion, all four factors weigh against a stay. Therefore, the Court will deny Paxton's request for a stay pending appeal and maintain the status quo.

## IV. CONCLUSION

For these reasons, **IT IS ORDERED** that Paxton's Opposed Motion to Stay Preliminary Injunction Pending Appeal, (Dkt. 69), is **DENIED**.

**IT IS FURTHER ORDERED** that Paxton's Unopposed Motion to Stay Preliminary Injunction Pending Appeal, (Dkt. 68), is **MOOT**.

**IT IS FINALLY ORDERED** that Paxton's Motion for Expedited Ruling, (Dkt. 75), is **MOOT**.

**SIGNED** on May 6, 2026.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE