# In the United States Court of Appeals for the Fifth Circuit

STUDENTS ENGAGED IN ADVANCING TEXAS; M.F., BY AND THROUGH NEXT FRIEND, VANESSA FERNANDEZ; Z.B., BY AND THROUGH NEXT FRIEND S.B.,

*Plaintiffs-Appellees,*

*v.*

KEN PAXTON, IN HIS OFFICIAL CAPACITY AS THE TEXAS ATTORNEY GENERAL,

*Defendant-Appellant.*

*consolidated with*

COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION,

*Plaintiff-Appellee,*

*v.*

KEN PAXTON, IN HIS OFFICIAL CAPACITY AS THE TEXAS ATTORNEY GENERAL,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TEXAS, AUSTIN DIVISION

## APPELLEES' JOINT OPPOSITION TO APPELLANT'S MOTION TO STAY PRELIMINARY INJUNCTIONS PENDING APPEAL

*Counsel for SEAT*
*Plaintiffs-Appellees*

Adam Sieff
Haley Zoffer
DAVIS WRIGHT TREMAINE LLP
350 S. Grand Ave, 27th Floor
Los Angeles, CA 90071
adamsieff@dwt.com

Ambika Kumar
DAVIS WRIGHT TREMAINE LLP

*Counsel for CCIA*
*Plaintiff-Appellee*

Brian Willen
WILSON SONSINI GOODRICH & ROSATI
31 W 52nd St., Fifth Floor
New York, NY 10019
bwillen@wsgr.com

Edward Percarpio
WILSON SONSINI GOODRICH & ROSATI
1700 K St. NW

920 Fifth Avenue, Suite 3300
Seattle, Washington 98104
ambikakumar@dwt.com

David Gossett
DAVIS WRIGHT TREMAINE LLP
1301 K Street NW, Suite 500 East
Washington, DC 20005
Telephone: (202) 973-4200
davidgossett@dwt.com

Abigail Everdell
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
abigaileverdell@dwt.com

Washington, D.C. 20006
epercarpio@wsgr.com

Laura Lee Prather
Catherine L. Robb
Michael J. Lambert
Reid Pillifant
HAYNES AND BOONE, LLP
98 San Jacinto Blvd., Suite 1500
Austin, Texas 78701
laura.prather@haynesboone.com

# CERTIFICATE OF INTERESTED PERSONS

Nos. 25-51073 & 26-50001

Students Engaged in Advancing Texas; M.F., By and Through Next Friend, Vanessa Fernandez; Z.B., By and Through Next Friend S.B.,

*Plaintiffs-Appellees,*

*v.*

Ken Paxton, in his official capacity as the Texas Attorney General,

*Defendant-Appellant.*

*consolidated with*

Computer & Communications Industry Association,

*Plaintiff-Appellee,*

*v.*

Ken Paxton, in his official capacity as the Texas Attorney General,

*Defendant-Appellant.*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. Plaintiffs-Appellees SEAT and CCIA have no parent corporations and no publicly held corporation owns 10% or more of their respective stock. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

**Plaintiffs-Appellees:**
Students Engaged in Advancing Texas, a 501(c)(3) Texas nonprofit corporation doing business as SEAT
Computer & Communications Industry Association, a 501(c)(6) non-stock Virginia Corporation doing business as CCIA

**Counsel for SEAT Plaintiffs-Appellees:**
Adam S. Sieff
Ambika Kumar
David M. Gossett
Abigail Everdell
DAVIS WRIGHT TREMAINE LLP

**Counsel for CCIA Plaintiff-Appellee:**
Brian M. Willen (lead counsel)
Lauren Gallo White
Deno Himonas
Edward P. Percarpio
WILSON SONSINI GOODRICH & ROSATI

Michael Lambert
Reid Pillifant
Laura Lee Prather
Catherine Lewis Robb
HAYNES AND BOONE, LLP

**Defendant-Appellant:**
Ken Paxton, in his official capacity as Attorney General of Texas

**Counsel for Defendant-Appellant:**
Jeffrey A. Stephens
Zachary Berg
OFFICE OF THE ATTORNEY GENERAL

DISTRICT COURT AMICI

**Amicus in Support of Plaintiff-Appellee CCIA:**
The App Association ("ACT")

**Counsel for ACT:**
Peter D. Kennedy
GRAVES, DOUGHERTY, HEARON & MOODY, P.C.

Graham Dufault
Brian Scarpelli
Chapin Gregor
ACT

**Amicus in Support of Plaintiff-Appellee CCIA:**
Chamber of Progress

**Counsel for Chamber of Progress:**
S. Lee Whitesell
Mark Brennan
Thomas Veitch
HOGAN LOVELLS US LLP

**Amici in Support of Plaintiff-Appellee CCIA:**
National Retail Federation, Texas Retailers Association

**Counsel for National Retail Foundation et al.:**
Ashley Hoff
J. Jonathan Hawk Pending
Austin Mooney
Katelyn N. Ringrose
MCDERMOTT WILL & SCHULTE LLP

Stephanie Martz
NATIONAL RETAIL FEDERATION

**Amici in Support of Plaintiff-Appellee CCIA and Plaintiffs-Appellees SEAT:**
The Reporters Committee for Freedom of the Press, Student Press Law Center, Advance Publications, Inc., The Associated Press, and The New York Times Company

**Counsel for The Reporters Committee for Freedom of the Press et al.:**
Tesia Stanley
Paul Safier
BALLARD SPAHR LLP

**Amici in Support of Plaintiffs-Appellees SEAT:**
**Amici in Support of Defendant-Appellant:**
National Center on Sexual Exploitation ("NCOSE"), the Digital
Childhood Institute ("DCI")

**Counsel for NCOSE et al.:**
Annie McAdams
ANNIE MCADAMS PC

**Amicus in Support of Defendant-Appellant:**
Coalition for a Competitive Mobile Experience

**Counsel for Coalition for a Competitive Mobile Experience:**
C. Eric Vickers
VICKERS LAW FIRM, PLLC

**Amici in Support of Defendant-Appellant:**
Bipartisan Technology Scholars Professor Meg Leta Jones & Joel
Thayer

**Counsel for Bipartisan Technology Scholars Professor Meg Leta
Jones & Joel Thayer:**
Conor R. Harvey
WRIGHT CLOSE BARGER

**Amicus in Support of Defendant-Appellant:**
Digital Childhood Alliance

**Counsel for Digital Childhood Alliance:**
John B. Scott

*/s/ Brian M. Willen*
BRIAN M. WILLEN
*Counsel of Record for
Plaintiffs-Appellees*

**TABLE OF CONTENTS**

Page

INTRODUCTION.................................................................1

BACKGROUND .................................................................2

   I.  Texas SB2420 ..........................................................2

   II.  Procedural Background...............................................4

   III. Motion to Stay Proceedings........................................5

ARGUMENT .....................................................................6

   I.  Legal Standard .......................................................6

   II.  Irreparable Harms and the Equities Favor Appellees .................7

   III. Texas Is Likely to Lose its Appeal Because SB2420 Violates
       the First Amendment ..............................................9

      A. SB2420 Imposes Content-Based Restrictions on Speech
         and Triggers Strict Scrutiny......................................9

          1.  The Act's Justification Is Content-Based......................10

          2.  The Act Is Content-Based on its Face .........................11

          3.  SB2420 Regulates Far More Than Contracts and
             Commercial Speech........................................13

      B. SB2420 Fails Under Strict or Intermediate Scrutiny............17

      C. The Act Is Not Severable, Nor Would Severance Change
         the Analysis....................................................19

      D. Texas Cannot Save the Act's Age-Rating and Significant-
         Change Provisions .............................................20

   IV. Neither *Trump v. CASA* Nor *Moody v. NetChoice* Change
       the Analysis .......................................................21

      A. Texas's Argument that the Preliminary Injunction Is
         Overbroad Is Forfeited and Fails .............................22

B. Texas Forfeited Its *Moody* Argument With Respect to CCIA ................................................................................. 24

C. Texas's *Moody* Arguments Independently Fail ....................... 25

    1. There Is No Moody Issue With Respect to CCIA .......... 26

    2. There Is No Moody Issue With Respect to the SEAT Plaintiffs ......................................................... 26

CONCLUSION ................................................................................. 27

# TABLE OF AUTHORITIES

Page(s)

## CASES

*303 Creative LLC v. Elenis*,
600 U.S. 570 (2023) .......................................................... 14

*All. for Hippocratic Med. v. U.S. Food & Drug Admin.*,
78 F.4th 210 (5th Cir. 2024) ............................................ 8

*Armstrong v. Exceptional Child Ctr., Inc.*,
575 U.S. 320 (2015) .......................................................... 22

*Ashcroft v. ACLU*,
542 U.S. 656 (2004) .......................................................... 11

*Barr v. Am. Ass'n of Pol. Consultants, Inc.*,
591 U.S. 610 (2020) .......................................................... 12

*Bd. of Trs. v. Fox*,
492 U.S. 469 (1989) .......................................................... 15

*Book People v. Wong*,
91 F.4th 318 (5th Cir. 2024) ....................................... 8, 14

*Boos v. Barry*,
485 U.S. 312 (1988) .......................................................... 11

*Brown v. Entertainment Merchants Association*,
564 U.S. 786 (2011) ..................................................... 14, 19

*Builder Recovery Servs., LLC v. Town of Westlake*,
650 S.W.3d 499 (Tex. 2022) ............................................ 20

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of
New York*,
447 U.S. 557 (1980) .......................................................... 15

*Citizens United v. FEC*,
558 U.S. 310 (2010) .......................................................... 13

*Dairyland Cnty. Mut. Ins. Co. v. Roman*,
   498 S.W.2d 154 (Tex. 1973) .............................................................. 19

*E.T. v. Paxton*,
   19 F.4th 760 (5th Cir. 2021) ........................................................... 7, 9

*FDA v. All. for Hippocratic Med.*,
   602 U.S. 367 (2024) ........................................................................... 8

*FEC v. Cruz*,
   596 U.S. 289 (2022) .......................................................................... 18

*Fla. Bar v. Went For It, Inc.*,
   515 U.S. 618 (1995) .......................................................................... 16

*Free Speech Coalition, Inc. v. Paxton*,
   606 U.S. 461 (2025) ...................................................... 10, 16, 24, 27

*Free Speech Coalition, Inc. v. Paxton*,
   95 F.4th 263 (5th Cir. 2024) ........................................................... 16

*Hines v. Pardue*,
   117 F.4th 769 (5th Cir. 2024) ......................................................... 18

*McCullen v. Coakley*,
   573 U.S. 464 (2014) .......................................................................... 18

*Moody v. NetChoice*,
   603 U.S. 707 (2024) ................................................................. *passim*

*NetChoice, LLC v. Carr*,
   789 F. Supp. 3d 1200 (N.D. Ga. 2025) ........................................... 14

*NetChoice, LLC v. Yost*,
   778 F. Supp. 3d 923 (S.D. Ohio 2025) ............................................ 14

*Nken v. Holder*,
   556 U.S. 418 (2009) .............................................................. 1, 5, 6, 7

*Reed v. Town of Gilbert*,
   576 U.S. 155 (2015) ..................................................................... 11, 12

*Reno v. ACLU,*
521 U.S. 844 (1997) ...................................................................... 19

*Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc.,*
487 U.S. 781 (1988) ...................................................................... 16

*Rollins v. Home Depot USA,*
8 F.4th 393 (5th Cir. 2021)............................................................22

*Roman Cath. Diocese of Brooklyn v. Cuomo,*
592 U.S. 14 (2020) ........................................................................ 8

*SEAT v. Paxton,*
814 F. Supp. 3d 769 (2025)............................................................25

*Spirit Aerosystems, Inc. v. Paxton,*
142 F.4th 278 (5th Cir. 2025)........................................................27

*Texas v. United States,*
40 F.4th 205 (5th Cir. 2022)................................................. 1, 6, 9

*Trump v. CASA, Inc.,*
606 U.S. 831 (2025) ........................................... 21, 22, 23, 24

*U.S. v. Playboy Ent. Grp.,*
529 U.S. 803 (2000) ......................................................................11

*Welty v. Dunaway,*
791 F. Supp. 3d 818 (M.D. Tenn. 2025) ........................................23

**STATUTES**

Tex. Bus. & Com. Code

§ 121.021(a) .................................................................................2

§ 121.021(b) .................................................................................3

§ 121.022.......................................................................................2

§ 121.022(g) .................................................................................3

§ 121.022(h) ............................................................................ 3, 11

§ 121.025.......................................................................................20

§ 121.026(a)(3) ........................................................................ 3

§ 121.052(a) ..................................................................... 3, 21

§ 121.053 .......................................................................... 3, 21

§ 541.001 ............................................................................ 13

Texas Civil Practices & Remedies Code

§ 129B.002 ......................................................................... 27

42 U.S.C § 1983 ...................................................................... 23

## INTRODUCTION

Texas's belated motion to stay the preliminary injunction should be denied. The State cannot meet its burden to satisfy any of the *Nken* factors, much less all of them. No equitable factor supports such extraordinary relief, and Texas has certainly not shown cause for urgency, having waited a full month after the injunction issued even to seek a stay in the District Court. And with the injunction in place, rather than seeking to expedite the merits appeal, Texas instead extended the deadline for its appeal brief, ultimately seeking a stay from this Court just three days before its merits brief was due. That conduct undercuts any claim of irreparable harm or urgency required to justify the "extraordinary remedy" of a stay. *Texas v. United States*, 40 F.4th 205, 215 (5th Cir. 2022).

Texas is also unlikely to succeed on the merits: SB2420 restricts an enormous amount of online speech in violation of controlling First Amendment precedent. The State admitted that the Act—which imposes broad new age-verification, parental-consent, and compelled speech obligations on online app stores and app developers—was enacted specifically to restrict access to certain kinds of constitutionally protected

online content. As the District Court observed, the Act is "akin to a law that would require every bookstore to verify the age of every customer at the door and, for minors, require parental consent before the child or teen could enter and again when they try to purchase a book." ROA.26.10001.1153-54, ROA.25-51073.671.

## BACKGROUND

Texas Senate Bill 2420, the App Store Accountability Act (the "Act" or "SB2420"), seeks to impose a sweeping age-verification, parental-consent, and age-rating regime on mobile app stores, developers, and mobile app users.

### I. Texas SB2420

*Age verification.* SB2420 bars Texans of all ages from creating accounts with app stores and downloading apps or content within them, unless they verify their age with the app store. § 121.021(a).

*Parental identity verification, account tethering, and consent.* Users determined to be under 18 must tether their account to a parent's account, and app stores must verify the parent is an "adult" with legal decision-making authority over the minor. § 121.022. For all minor accounts, the app store must obtain consent from the parent every time the minor wants to download an app or make an in-app purchase.

2

§§ 121.022, 121.026(a)(3). Additionally, whenever an app developer makes a "significant change" to its app, the app store must pause the minor's access to the app until the parent renews their consent. §§ 121.022(g), 121.053. Thus, if an app store determines a user is 17 years old, the app store cannot allow that teenager to download a news, bible study, or audiobook app (for example) or make an in-app purchase until the 17-year old has linked his account to a verified parent's and received parental consent—first to the app download, and then to the purchase.

The Act provides two content-based exceptions to the parental-consent requirement: (1) apps that "provide[] . . . direct access to emergency services" and meet additional criteria, and (2) nonprofit-affiliated apps that develop, sponsor, or administer standardized testing for post-secondary education. § 121.022(h).

*Age-rating and display*. App developers must also assign an age rating to every app and every item available for in-app purchase, based on four age categories. §§ 121.052(a), 121.021(b). These categories do not overlap with commonly-used age categories, such as those already employed by the Apple App Store or Google Play Store. ROA.26-50001.402-03 ¶ 34. No additional guidance is provided on how developers

3

should make age-category determinations. App stores must then display the age ratings.

## II. Procedural Background

On October 16, 2025, Appellees sued to enjoin SB2420's enforcement under the First Amendment. ROA.26-50001.16-17, ROA.25-51073.12. Appellees simultaneously moved for a preliminary injunction, backed by declarations attesting to the robust First Amendment activity on Appellees' app stores and apps, and how the Act would burden the access to and dissemination of speech for app stores, developers, and users. ROA.26-50001.327-82, ROA.25-51703.74-505.

On December 16, 2025, the District Court held a hearing on Appellees' motions for a preliminary injunction. During the hearing, the State admitted the purpose of the Act was to protect children from fully protected but potentially harmful content. ROA.26-50001.1162, ROA.26-50001.1296:1-9. At no point did the State introduce any evidence to support the constitutionality of the Act.

On December 23, 2025, the District Court preliminarily enjoined the State from enforcing the Act. The Court found that CCIA was likely to succeed on the merits of its First Amendment claims; that CCIA

"shows that its members will suffer irreparable injury in the absence of an injunction"; and that "[t]he balance of equities and public interest" favored enjoining SB2420. ROA.26-50001.1171. The Court made the same findings with respect to the SEAT Plaintiffs. ROA.25-51073.688.

The same day, Texas appealed.

## III. Motion to Stay Proceedings

Texas waited a full month after the preliminary injunction issued—and three weeks after the law would have taken effect—to seek a stay from the District Court. The District Court denied the stay motion, finding that all four *Nken* factors weighed in favor of denial.

In doing so, the District Court reiterated that the Act was content-based because the State told it so: during the PI briefing and hearing, the State "repeatedly described the law as having a content-based purpose to restrict certain content from minors." CCIA Dkt. 76 at 3. And though strict scrutiny applied, the law would "fail [under] intermediate scrutiny because the State offered no evidence connecting the Act's goals to its methods." *Id*. "In any event, Paxton does not explain how SB 2420 would survive intermediate scrutiny, much less make a strong showing of success on this argument." *Id*.

On the remaining *Nken* factors, Texas "cite[d] no authority" for irreparable harm, *id.*, and "has other ways it could advance [the public] interest" of "giv[ing] parents tools to protect their children online[.]" *Id.* at 4. For example, Texas could enforce existing laws or "pass[] laws and regulations that comply with the First Amendment." *Id.* at 4-5.

Texas filed the instant motion to stay on May 15, three days before its opening merits brief was due and five months after the law's effective date. The State has not sought expedited consideration of its appeal or an accelerated briefing schedule. Instead, the State sought and received a 30-day extension for the deadline to file its opening brief in this Court. SEAT Dkt. 24, 25-51073.

## ARGUMENT

### I. Legal Standard

A stay pending appeal "intru[des] into the ordinary processes of administration and judicial review." *Nken v. Holder*, 556 U.S. 418, 427 (2009). A stay is thus "an extraordinary remedy." *Texas*, 40 F.4th at 215. The party seeking the stay bears the burden of showing that this extraordinary remedy is warranted. *Nken*, 556 U.S. at 433-34.

A four-factor test governs a court's consideration of a motion for stay pending appeal: "(1) whether the stay applicant has made a strong

showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *E.T. v. Paxton*, 19 F.4th 760, 764 (5th Cir. 2021) (quotation omitted).

## II. Irreparable Harms and the Equities Favor Appellees

Though *Nken* traditionally starts with the merits, Texas's noteworthy delay in seeking and pursuing a stay belies any equitable argument and is reason enough to deny the stay motion at the threshold. The entire premise of a stay is that "there is insufficient time to resolve the merits and irreparable harm may result from delay." *Nken*, 556 U.S. at 432. But Texas waited a month after the preliminary injunction issued—and three weeks after the Act's effective date—even to ask the District Court to stay the injunction, and Texas did not seek relief in this court until nearly five months after SB2420 was to take effect. Further, even with the injunction in place, Texas made no effort to expedite this Court's consideration of its appeal but instead obtained a 30-day extension to file its opening appellate brief.

Texas's only argument for irreparable harm is that it cannot enforce the Act (Mot. 19). But Texas does not appear eager to enforce the Act, and regardless, neither "[the government] nor the public has any interest in enforcing a regulation that violates federal law." *All. for Hippocratic Med. v. U.S. Food & Drug Admin.*, 78 F.4th 210, 251 (5th Cir. 2024), *rev'd on other grounds*, 602 U.S. 367 (2024). Rather, "[i]njunctions protecting First Amendment freedoms are always in the public interest." *Book People v. Wong*, 91 F.4th 318, 341 (5th Cir. 2024). As discussed *infra*, SB2420 is flagrantly unconstitutional and there is no public interest in enforcing it.

In contrast to Texas's tepid showing, CCIA and SEAT have built a detailed factual record demonstrating how a stay would inflict multiple forms of irreparable harm on Texas users, app stores, and app developers, including deprivations of First Amendment rights (paradigmatic irreparable harm) and unrecoverable compliance costs and burdens. *See Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."). ROA.26-50001.407-10 ¶¶ 43-47, ROA.26-50001.428-31 ¶¶ 38-39, 41, 43, ROA.26-50001.437-39

8

¶¶ 17-18, 20, 22, 24, 26, 32-33, ROA.25-51073.477-84 ¶¶ 5-18, ROA.25-51073.485-92 ¶¶ 3-19, ROA.25-51073.493-500 ¶¶ 3-19.

Altogether, Texas's own actions undercut the notion that this is an extraordinary situation that warrants such an "extraordinary remedy." *Texas*, 40 F.4th at 215. Texas's disagreement with the District Court on the merits can be taken up by this Court in the ordinary appellate process, which is already well underway.

## III. Texas Is Likely to Lose its Appeal Because SB2420 Violates the First Amendment

Texas bears the burden to "ma[k]e a strong showing that [it] is likely to succeed on the merits." *E.T.*, 19 F.4th at 764. Texas has not carried that burden. The District Court was right to find that SB2420 unconstitutionally restricts speech and to preliminarily enjoin it on that basis.

### A. SB2420 Imposes Content-Based Restrictions on Speech and Triggers Strict Scrutiny

"A law can regulate the content of protected speech, and thereby trigger strict scrutiny, either on its face or in its justification." *Free*

*Speech Coalition, Inc. v. Paxton*, 606 U.S. 461, 482 (2025) (quotation omitted). SB2420 does both.[1]

### 1.    The Act's Justification Is Content-Based

Texas ignores the record (and its own admissions) when it argues that "[n]o speech is being singled out or banned by the Legislature, which merely empowers parents." Mot. 9. The *first sentence* of the sponsor's statement of intent in the Senate Committee Report expresses "[g]rowing concerns regarding the rise of social media and its pervasiveness in the lives of children and teens." ROA.26-50001.359, ROA.26-50001.542. Further Senate testimony stated that "[m]obile applications have become a gateway to harm, exposing minors to *inappropriate content*[.]" ROA.26-50001.486. 42:19-21 (emphasis added).

Rather than disavow the point, Texas doubled-down on this content-based justification. Its PI briefing concedes the Act was passed to shield minors from "unsuitable," "objectionable," or potentially "harmful" information. ROA.25-51073.579, ROA.25-51073.580, ROA.25-

---

[1] Although not reached by the District Court, strict scrutiny also applies because (1) the Act's content-classification and preclearance regime creates a system of overlapping prior restraints (ROA.25-51703.82-84); and (2) the age rating and display provisions compel non-commercial speech (ROA.26-50001.138-146).

51073.581, ROA.25-51073.584-25. Texas reiterated this point at the PI hearing. ROA.26-50001.1162, ROA.26-50001.129, 6:1-9. And when pressed, it elaborated on the specific types of content it had in mind, including "social media websites" and "mobile gaming." ROA.26-50001, 198:17-24.

Because SB2420 is justified by "the direct impact that speech has on its listeners," strict scrutiny applies to the entire law. *Boos v. Barry*, 485 U.S. 312, 320-21 (1988); *U.S. v. Playboy Ent. Grp.*, 529 U.S. 803, 811-12 (2000); *Ashcroft v. ACLU*, 542 U.S. 656, 670 (2004).

### 2. The Act Is Content-Based on its Face

The Act is also content-based because it exempts certain apps (those providing emergency services and standardized testing) based on their content. § 121.022(h). Thus, "children [who] would not face a barrier accessing an app from the College Board . . . would be unable to access an app from a newspaper." ROA.26-50001.1162, ROA.25-51703.678. Yet "[a] law cannot 'single[] out specific subject matter for differential treatment,' by using the 'function or purpose' of speech as a stand-in for its content, without being subject to strict scrutiny." ROA.26-50001.1161, ROA.25-51703.677 (quoting *Reed v. Town of Gilbert*, 576 U.S. 155, 163-

11

64, 169 (2015)); *see also Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 619-21 (2020) (controlling plurality op.) (applying strict scrutiny where exemption was "directed at certain content and [] aimed at particular speakers").

The State's reliance on *Barr* is misplaced. Mot. 12-13. That case found that a debt-collection exemption to the federal Telephone Consumer Protection Act (TCPA) triggered and failed strict scrutiny. 591 U.S. at 618-21. Nor does *Barr* support Texas's argument that SB2420's exceptions escape strict scrutiny because they are speaker-based. Mot. 13. The controlling plurality in *Barr* explained that "laws favoring some speakers over others demand strict scrutiny when the legislature's speaker preference reflects a content preference." 591 U.S. at 619-20.

*Barr*'s severability analysis does not help the state either. *Barr* addressed the unequal treatment of different kinds of robocalls—a disparity created by a discrete amendment enacted *24 years* after the original statute. *Id.* at 616. Once the exemption was eliminated, a valid speech restriction remained. But here, the age-verification and parental consent requirements violate the First Amendment, and content-based exceptions are just one of several reasons those provisions trigger strict

scrutiny. There is nothing the court could sever that would make these requirements constitutionally valid. At any rate, the severance remedy does not avoid the threshold question of whether strict scrutiny is warranted and satisfied.

### 3. SB2420 Regulates Far More Than Contracts and Commercial Speech

Texas next tries to reframe SB2420 as directed only at contracts and data privacy. Mot. 8-9. Perhaps Texas is confusing the Act with the Texas Data Privacy and Security Act, which is actually tailored to those topics. Tex. Bus. & Comm. Code §§ 541.001 *et seq.* SB2420, in contrast, limits everyone in Texas from accessing fully protected speech "at the outset" of the "speech process." *Citizens United v. FEC*, 558 U.S. 310, 336 (2010). It does so by forcing app stores to age verify every would-be user and blocking minors from downloading apps or paid in-app content without parental consent. The Act also imposes onerous compelled speech mandates in the form of requirements that app developers and stores age-rate every book, movie, episode, or other article of speech offered for sale within any mobile app. In finding these provisions burdened speech, the District Court followed the lead of other courts that have consistently rejected attempts to classify statutes like SB2420 as mere "contracting"

laws. *See NetChoice, LLC v. Yost*, 778 F. Supp. 3d 923, 947-48, 950 (S.D. Ohio 2025); *NetChoice, LLC v. Carr*, 789 F. Supp. 3d 1200, 1221 (N.D. Ga. 2025).

Texas is also incorrect that SB2420 is a mere commercial-speech regulation. Mot. 7. Commercial speech is "[e]xpression related solely to the economic interests of the speaker and its audience . . . which does no more than propose a commercial transaction." *Book People*, 91 F.4th at 339 (quotations omitted). The District Court correctly observed that "[t]he Act does not limit its coverage to speech that proposes a commercial transaction." ROA.26-50001.1163, ROA.25-51703.679. Instead, SB2420's onerous age-verification and parental-consent mandates apply to downloading countless varieties of fully protected speech. That some of this material is sold or rented does not make it commercial speech. *See 303 Creative LLC v. Elenis*, 600 U.S. 570, 594, 600 (2023).

*Brown v. Entertainment Merchants Association*, 564 U.S. 786, 789, 792 n.1 (2011), rejected a similar gambit, holding that restricting minors from renting or purchasing content (video games) restricts fully protected speech, despite California's claim that its law "cover[ed] only commercial transactions entered into by minors outside the presence of parents,"

14

Pet.'s Reply Br., *Brown v. Ent. Merchs. Ass'n*, 2010 WL 4034925, at *3-4, *11-18 (U.S. filed Oct. 8, 2010).

Trying to distinguish *Brown*, Texas asserts that app store user agreements do more than just provide access to speech. Mot. 9. But that doesn't change the fact that Texas requires age verification as a prerequisite to downloading any online app or in-app purchase—the core operation of app stores. And while app store user agreements may also authorize data collection and set terms for user privacy, the Act does not regulate those aspects of the agreements. It instead uses age-verification at the account-creation stage to create a parental-consent obligation that specifically (and exclusively) covers obtaining apps and in-app content—which the State does not deny involves core speech. That makes this case not materially different from *Brown*.

Texas also fails to point to any provision of SB2420 that targets commercial speech, putting the Act in stark contrast with laws it cites (Mot. 7-8),[2] or laws like HB1181, which the Fifth Circuit considered

---

[2] *Bd. of Trs. v. Fox*, 492 U.S. 469, 471-72, 474-75 (1989) (regulation of commercial speech where state university banned "private commercial enterprises" from advertising their products); *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 558 (1980) (regulation of commercial speech where "electric utilities in New York

under the commercial speech doctrine in *Free Speech Coalition, Inc. v. Paxton*, 95 F.4th 263 (5th Cir. 2024), *rev'd in part on other grounds*, 606 U.S. 461 (2025). That law was determined to target commercial speech because its coverage definition only "regulates 'commercial entit[ies].'" *Id.* at 280. "The text's focus on business and corporate forms reads most naturally as an indication that the statute reaches only those entities that publish or distribute sexual material harmful to minors *for commercial or business purposes." Id.*

Even assuming this analysis were controlling (it was pointedly not followed by the Supreme Court when it addressed HB1181), SB2420 has no comparable limiting coverage provision. Nor does SB2420 exempt non-commercial apps from its age-verification or parental-consent requirements (aside from emergency services and educational apps). *See Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc.*, 487 U.S. 781, 796 (1988) (laws restricting commercial and non-commercial aspects of speech together are treated as regulations of non-commercial speech).

---

State [were ordered] to cease all advertising that promot[es] the use of electricity"); *Fla. Bar v. Went For It, Inc.*, 515 U.S. 618, 620, 623-24 (1995) (same, where law prohibited personal injury lawyers from soliciting accident victims).

The Fifth Circuit also found that free pornography sites were commercial speech because "instead of being closer to a paywall on a newspaper—core, protected speech—the landing pages are more like the entrance to a strip club—commercial activity with a speech element." *Id.* But SB2420 *does* cover newspapers and other "core, protected speech." *Id.* Indeed, it regulates every newspaper that has a mobile app, from the New York Times to the Houston Chronicle. And again, the Act contains no limiting language that narrows the focus of the law to, for instance, the monetization of data, how an app serves advertisements, or how it would otherwise propose a commercial transaction. As the District Court observed, "if the legislature intended to cover only commercial speech, as Paxton suggests, it could have easily added clarifying language saying as much." ROA.26-50001.1163, ROA.25-51703.679.

### B. SB2420 Fails Under Strict or Intermediate Scrutiny

The District Court did not err when it held the Act unconstitutional under strict scrutiny, or when it held that SB2420 would not satisfy even intermediate scrutiny. ROA.26-50001.1167, ROA.25-51703.683. Texas does not (and cannot) contest the District Court's finding that it "has not offered any evidence connecting the Act to its methods." Mot. 10 (quoting

ROA.26-50001.1167). Instead, Texas is forced to argue that the law's constitutionality is self-evident and the District Court should have been "equipped" to figure that out for itself. *Id.* But Texas no longer argues (as it did below) that rational basis review should apply, and so it cannot simply abdicate its "burden of justification"—which "rests *entirely* on the state"—for the court to shoulder. *Hines v. Pardue*, 117 F.4th 769, 779 (5th Cir. 2024); *see also FEC v. Cruz*, 596 U.S. 289, 307 (2022) ("mere conjecture" is insufficient to carry any First Amendment burden).

Texas's tailoring analysis also relies on the same mistaken premise that the law only targets commercial speech and minors' ability to enter into contracts. Mot. 10-11. But, as discussed, the law targets far more. And if regulating commercial speech and contracts were Texas's goal, then it unnecessarily suppresses protected speech (including political, educational, artistic, and all manner of non-commercial speech) in the process. That is hardly "a close fit between ends and means." *McCullen v. Coakley*, 573 U.S. 464, 486 (2014). The Act is also underinclusive by leaving entirely unregulated the same content available on *non-mobile* apps or web browsers.

The State claims an interest in protecting children and empowering parents. Mot. 10-11. But that interest "does not include a free-floating power to restrict the ideas to which children may be exposed." *Brown*, 564 U.S. at 794-95. Nor does it "justify an unnecessarily broad suppression of speech addressed to adults." *Reno v. ACLU*, 521 U.S. 844, 875 (1997). Particularly not where the State allows minors to void contracts, *Dairyland Cnty. Mut. Ins. Co. v. Roman*, 498 S.W.2d 154, 158 (Tex. 1973), and where it already has laws that govern businesses' use of children's data (e.g., the Texas Data Privacy and Security Act) and permit age-verification for certain narrow types of speech (e.g., HB1181).

### C. The Act Is Not Severable, Nor Would Severance Change the Analysis

Texas suggests the Court should have severed the content-based exceptions to save the Act. Mot. 12-14. But severance would not alter the scrutiny analysis because the entire Act is inflected with a content-based justification that operates to directly bar access to and distribution of a host of "harmful" and non-harmful speech. *See supra* Section III(A)(1). And as long as the State's overbroad age-verification and parental-consent requirements remain, the law still fails any level of heightened scrutiny. Nor could the Court sever those provisions without thwarting

how the law operates or contravening the legislature's intent. *Builder Recovery Servs., LLC v. Town of Westlake*, 650 S.W.3d 499, 507 (Tex. 2022). So too with the data protection and contract-related provisions, as they operate only in relation to the Act's substantive age-verification and parental-consent requirements. §§ 121.025; 121.026(a)(1), (3); 121.055; 121.056(a)(1), (3). Severance does not save SB2420, and it certainly does not warrant a stay of the preliminary injunction.

### D. Texas Cannot Save the Act's Age-Rating and Significant-Change Provisions

Texas fares no better in challenging the District Court's holding that SB2420's age-rating requirement is unconstitutionally vague because it fails to give developers any guidance on how to determine the age-appropriateness of any given app or its third-party content for purchase. §§ 121.021(b), 121.052. Contrary to Texas's suggestion (Mot. 15), "industry standards" do not fill in this regulatory gap because Texas's age categories do not track any of the industry standard age ratings, whether for online games (ESRB), movies (MPAA), or the age categories used by leading app stores. ROA.26-50001.373-75. Texas's purported "good faith" defense (Mot. 16) does not permit sole reliance on industry age ratings, as doing so would contravene the developer's

20

obligation to set the age rating "based on the age categories described by the Act." § 121.052(a). Thus, the District Court correctly noted that following industry standards "may not be sufficient." ROA.26-50001.1168.

The District Court also correctly held that the "significant changes" provision is unconstitutionally vague because "the spectrum of interpretations is vast and could lead to selective or disparate enforcement." ROA.26-50001.1169, ROA.25-51703.685. Texas notes that the Tenth Circuit, in the post-conviction proceeding context, did not take issue with the term "material change *in the law*." Mot. 17 (emphasis added). But that hardly sheds light on what it means to "materially change[]" a mobile app's "functionality or user experience." § 121.053. And while Texas claims that "[t]he 'new opportunities to make a purchase' phrase is even more straightforward," (Mot. 17), Texas fails to use its clairvoyance to answer the District Court's question about whether a new song on Apple Music would trigger the provision. ROA.26-50001.1169, ROA.25-51703.685.

## IV. Neither *Trump v. CASA* Nor *Moody v. NetChoice* Change the Analysis

## A. Texas's Argument that the Preliminary Injunction Is Overbroad Is Forfeited and Fails

In passing, Texas belatedly challenges the scope of the injunction under *Trump v. CASA, Inc.*, 606 U.S. 831 (2025). But Texas forfeited this argument by failing to raise it below, and it certainly should not be considered for the first time in connection with a motion to stay. *Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021). Regardless, *CASA* does not apply here.

*First*, rather than entering a nationwide "universal injunction" barred by *CASA*, the District Court, sitting in Texas, enjoined Texas officials from enforcing an unconstitutional state law in Texas. Further, *CASA* "rest[ed] solely on the statutory authority that federal courts possess under the Judiciary Act of 1789," 606 U.S. at 841 n.4. The Court neither considered nor modified district courts' longstanding equitable and statutory authority under Section 1983 and *Ex Parte Young* to issue injunctions against state officials prohibiting them from enforcing unconstitutional state laws. *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015); ROA.26-50001.23 ¶ 23, ROA.25-51073.15 ¶ 9.

*Second*, *CASA* "does not address the need for broader injunctions in the First Amendment context," and so it provides no license for courts to

"disregard the Supreme Court's prior First Amendment jurisprudence." *Welty v. Dunaway*, 791 F. Supp. 3d 818, 843 (M.D. Tenn. 2025). That precedent allows courts to find that "when a law is unconstitutionally overbroad [under the First Amendment], 'all enforcement of that law' may be enjoined." *Id.* (citing *Moody v. NetChoice*, 603 U.S. 707, 723 (2024), among others). Nothing in *CASA* disturbs that longstanding authority.

*Third*, even if *CASA* applied, the scope of the injunction was necessary to "provide complete relief to" CCIA's app store and developer members and the SEAT user plaintiffs. 606 U.S. at 861. If, for instance, the injunction protected only CCIA's developers, third-party developers would need CCIA's member app stores to engage in age-verification and parental-consent in order to comply with the Act. But that is precisely what injunction is supposed to protect CCIA's member app stores from having to do. In short, because developer obligations depend on information and infrastructure provided by app stores, CCIA's successful facial constitutional challenge to the *app store* provisions means, in practice, that the law cannot be enforced against *app developers* either.

23

Likewise, an injunction that only applied to the SEAT Plaintiffs would not afford them complete relief. Any such injunction would defeat itself: app stores would need to identify which of their users are the SEAT Plaintiffs to allow them to bypass the State's regime, imposing the exact gating measure the SEAT Plaintiffs sued to enjoin. *See Free Speech Coalition*, 606 U.S. at 495 (screening "necessarily" burdens the "right to access speech"). Because there is "no way 'to peel off just the portion'" of the State's clearance regime that applies to the SEAT Plaintiffs without exposing them to the constitutional injuries the injunction exists to prevent, an indivisible statewide remedy is necessary for the same reason an injunction against a neighborhood nuisance is necessary despite benefiting non-plaintiff neighbors. *CASA*, 606 U.S. at 851-82.

*Finally*, even if the District Court did not abide by *CASA*, the appropriate remedy is not vacatur (*see* Mot. 19) but to narrow the scope of the injunction to the parties. *Id.* at 861 (granting partial stay only to the extent it was overbroad).

B. **Texas Forfeited Its *Moody* Argument With Respect to CCIA**

Texas next argues that "Plaintiffs did not meet their burden under *Moody*" to obtain facial relief, and that the District Court "did not apply

24

a proper facial invalidity analysis under *Moody*." Mot. 14-15. *Moody* instructs that courts should grant facial relief only where a law's "unconstitutional applications are substantial compared to its constitutional ones," and provides a two-step framework to engage in that inquiry. 606 U.S. at 718. But as to CCIA, this argument was forfeited: Texas did not raise any *Moody* argument against CCIA's facial challenge in any of its briefing in the District Court. ROA.26-50001.553-80, ROA.26-50001.1183-90. Had Texas done so, the parties and the District Court could have had the opportunity to consider the argument and make a record. It is too late now.

## C. Texas's *Moody* Arguments Independently Fail

Texas's argument also fails on the merits. The District Court properly applied *Moody*'s two-step framework when it facially enjoined SB2420. Under step one, the District Court "assess[ed SB2420's] scope" and concluded that "the requirements exclusively target speech, only a small portion of which falls outside First Amendment coverage." *CCIA*, 814 F. Supp. 3d at 804; *SEAT v. Paxton*, 814 F. Supp. 3d 769, 786 (2025). Under step two, the District Court measured the law's "constitutional and unconstitutional applications" and found that "only in the vast

minority of applications would SB 2420 have a constitutional application to unprotected speech not addressed by other laws." *Id.* Texas's contentions that the District Court "failed to apply the correct analysis" (Mot. 14) are misguided.

### 1. There Is No Moody Issue With Respect to CCIA

Texas's concern appears to be that CCIA and the District Court "fail[ed] to provide a full review of the millions of apps available on the app stores" under *Moody*'s balancing test. Mot. 15. But Texas forgets that CCIA brought a facial challenge with respect to *app stores*, not app developers. ROA.26-50001.348-49. And in that context, Texas repeatedly took the position on the record that CCIA's app store members—Apple and Google—comprise the universe of mobile app stores the law was intended to regulate. *See* ROA.26-50001.560, ROA.26-50001.456:10-20, ROA.26-50001.459:23-460:1, ROA.26-50001.508:25-509:2. Texas identifies no other stores as to whom the Act's requirements would impose a lesser First Amendment problem.

### 2. There Is No Moody Issue With Respect to the SEAT Plaintiffs

Facial relief is the natural remedy for the SEAT Plaintiffs, as well. At *Moody*'s first step, the SEAT Plaintiffs showed—and the State

effectively conceded below, ROA.25-51703.573, 579, 581—that *every* application of the challenged provisions "necessarily" burdens Texans' "right to access speech" by placing apps and paid app content behind an age-gate. *Free Speech Coal.*, 606 U.S. at 495. At *Moody*'s second step, the SEAT Plaintiffs demonstrated—and the State below confirmed, ROA.25-51703.577, ROA.25-51703.584—that the challenged provisions' dragnet only has constitutional applications to unprotected speech (like obscenity for minors) incidentally swept in. *See Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 255 (2002) (blanket regulations that restrict protected speech to shield minors from unprotected speech are archetypically overbroad). Even many of those incidental constitutional applications are irrelevant since Texas Civil Practices & Remedies Code § 129B.002 *already* restricts online content unprotected for minors. *See Spirit Aerosystems, Inc. v. Paxton*, 142 F.4th 278, 286 (5th Cir. 2025) (facial challenges do not consider applications "where the statute does no work").

## CONCLUSION

Texas has not met its burden on any of the relevant factors. The Court should deny Texas's motion to stay the preliminary injunction.

Dated: May 26, 2026

/s/  *Brian M. Willen*
Brian M. Willen

Brian Willen
WILSON SONSINI
GOODRICH & ROSATI
31 W 52nd St., Fifth Floor
New York, New York 10019
Telephone: (650) 849-3340
bwillen@wsgr.com

Edward Percarpio
WILSON SONSINI
GOODRICH & ROSATI
1700 K St. NW
Washington, D.C. 20006
Telephone: (202) 973 8898
epercarpio@wsgr.com

Laura Lee Prather
Catherine L. Robb
Michael J. Lambert
Reid Pillifant
HAYNES AND BOONE, LLP
98 San Jacinto Blvd., Suite 1500
Austin, Texas 78701
laura.prather@haynesboone.com

*Attorneys for CCIA Plaintiff-Appellee*

Dated: May 26, 2026

/s/  *Adam S. Sieff*
Adam S. Sieff

Adam S. Sieff
Haley B. Zoffer
DAVIS WRIGHT TREMAINE LLP
350 South Grand Ave, 27th Floor
Los Angeles, California 90071
Telephone: (213) 633-6800
adamsieff@dwt.com

Ambika Kumar
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Telephone: (206) 622-3150
Facsimile: (206) 757-7312
ambikakumar@dwt.com

haleyzoffer@dwt.com

Abigail B. Everdell
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st
Floor
New York, New York 10020
Telephone: (212) 603-6488
abigaileverdell@dwt.com

erwinreschke@dwt.com

David M. Gossett
DAVIS WRIGHT TREMAINE LLP
1301 K Street NW, Suite 500 East
Washington, DC 20005
Telephone: (202) 973-4200
davidgossett@dwt.com
celyramyers@dwt.com

*Attorneys for SEAT Plaintiffs-Appellees*

## CERTIFICATE OF SERVICE

I certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. I also certify that service will be accomplished on all registered CM/ECF users by the appellate CM/ECF system, that any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13, and that the document has been scanned and is free of viruses.

Dated: May 26, 2026 *          /s/   Brian M. Willen*
                                        Brian M. Willen

                                        *Counsel for Appellees*

## CERTIFICATE OF COMPLIANCE

I certify the following in compliance with Federal Rule of Appellate Procedure 27: The foregoing motion is in 14-point, proportionally-spaced serif font (Century Schoolbook) and contains 5196 words, excluding the parts of the document exempted by Rule 32(f).

Dated: May 26, 2026 *          /s/   Brian M. Willen*
                                        Brian M. Willen

                                        *Counsel for Appellees*