Nos. 25-51073 & 26-50001

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

---

Students Engaged in Advancing Texas; M.F., by and through next friend Vanessa Fernandez; Z.B., by and through next friend S.B,

PLAINTIFFS-APPELLEES,

v.

Ken Paxton, in his official capacity as the Texas Attorney General,

DEFENDANT-APPELLANT.

*consolidated with*

Computer & Communications Industry Association,

PLAINTIFF-APPELLEE,

v.

Ken Paxton, in his official capacity as the Texas Attorney General,

DEFENDANT-APPELLANT.

---

On Appeal from the United States District Court for the Western District of Texas
Case Nos. 1:25-CV-1662 and 1:25-CV-1660
The Honorable Robert Pittman, District Judge

---

# NOTICE OF MOTION FOR LEAVE TO FILE BRIEF *AMICUS CURIAE* IN SUPPORT OF PLAINTIFFS-APPELLEES

Darío Maestro
  *Counsel for Amicus Curiae*
Michelle Dahl
SURVEILLANCE TECHNOLOGY OVERSIGHT PROJECT
1350 Avenue of the Americas Floor 2, Box 1089
New York, NY 10019
(212) 518-7573
dario@stopspying.org

**MOTION FOR LEAVE TO FILE *AMICUS CURIAE* BRIEF**

Pursuant to Fed. R. App. P. 27 and 29(a)(3), *amicus curiae* the Surveillance Technology Oversight Project ("S.T.O.P.") respectfully moves for leave to file an *Amicus Curiae* Brief in Support of Plaintiffs-Appellees (Exhibit 1).

**MOVANTS' INTERESTS**

S.T.O.P. is a non-partisan, not-for-profit organization based in New York that works to promote community freedom by ending systems of mass surveillance, advocating in courts and legislatures nationwide to ensure that technology serves the public without sacrificing privacy. S.T.O.P. is dedicated to protecting the privacy rights of all technology users and has extensive experience in cases concerning data security, surveillance, online safety, and especially the privacy risks of age verification. S.T.O.P. has advised regulators implementing age-verification requirements on the limits of commercially available solutions, which cannot confirm a user's age without collecting sensitive personal data.

**REASONS FOR AND RELEVANCE OF *AMICUS CURIAE***

In *amicus*'s view, an important aspect of this case has gone unaddressed by other briefing: whether S.B. 2420 can be reconciled with federal and state data privacy laws that already govern the entities it regulates. As detailed in the proposed brief, S.B. 2420 creates new duties for app store owners and app developers that directly conflict with existing limits on data collection practices.

1

Part I of *amicus*'s proposed brief describes the inherent contradictions between S.B. 2420 and the Children's Online Privacy Protection Act, especially regarding the rights of parents to decide what is done with their child's data. Part II then illustrates the impossibility of complying with both S.B. 2420 and the Texas Data Privacy and Safety Act due to the competing obligations each law imposes on app store owners and app developers.

The Court should grant *amicus*'s request for leave to file our proposed brief because, as an organization with deep expertise on issues surrounding privacy and age verification, S.T.O.P. is able to offer the Court "unique information [and] perspective." *In re Halo Wireless, Inc.,* 684 F.3d 581, 596 (5th Cir. 2012). None of the briefs on the record address this threshold issue of conflicts with existing federal and state law. Thus, *amicus*'s brief may help the Court to "avoid error in [its] judgment[]," *Lefebure v. D'Aquilla*, 15 F.4th 670, 675 (5th Cir. 2021).

## CONCLUSION

For the above reasons, S.T.O.P. respectfully requests the Court grant this motion and consider the concurrently filed brief (Exhibit 1).

Respectfully Submitted,

Dated: June 24, 2026

/s/ *Darío Maestro*
Darío Maestro
  *Counsel for Amicus Curiae*
Michelle Dahl
SURVEILLANCE TECHNOLOGY
OVERSIGHT PROJECT

2

1350 Avenue of the Americas Floor 2, Box 1089
New York, NY 10019
 (212) 518-7573
dario@stopspying.org

Cc: All counsel of record (via CM/ECF)

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), I certify as follows:

1. This motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2) because this motion contains 391 words, excluding the parts of the motion exempted by Fed. R. App. P. 32(f).

2. This motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because this motion has been prepared in Times New Roman 14-point font using Microsoft Word.

Dated: June 24, 2026

/s/ *Darío Maestro*
Darío Maestro

*Counsel for Amicus Curiae*

## CERTIFICATE OF SERVICE

I hereby certify that on June 24, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will provide electronic notice and an electronic link to this document to all attorneys of record.

Dated: June 24, 2026                     /s/ *Darío Maestro*
                                         Darío Maestro

                                         *Counsel for Amicus Curiae*

# Exhibit 1

Nos. 25-51073 & 26-50001

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

---

Students Engaged in Advancing Texas; M.F., by and through next friend Vanessa Fernandez; Z.B., by and through next friend S.B,

PLAINTIFFS-APPELLEES,

v.

Ken Paxton, in his official capacity as the Texas Attorney General,

DEFENDANT-APPELLANT.

*consolidated with*

Computer & Communications Industry Association,

PLAINTIFF-APPELLEE,

v.

Ken Paxton, in his official capacity as the Texas Attorney General,

DEFENDANT-APPELLANT.

---

On Appeal from the United States District Court for the Western District of Texas
Case Nos. 1:25-CV-1662 and 1:25-CV-1660
The Honorable Robert Pittman, District Judge

---

## BRIEF OF *AMICUS CURIAE* SURVEILLANCE TECHNOLOGY OVERSIGHT PROJECT IN SUPPORT OF PLAINTIFF-APPELLEES

Darío Maestro
  *Counsel for Amicus Curiae*
Michelle Dahl
SURVEILLANCE TECHNOLOGY OVERSIGHT PROJECT
1350 Avenue of the Americas Floor 2, Box 1089
New York, NY 10019
(212) 518-7573
dario@stopspying.org

## STATEMENT OF INTERESTED PARTIES

Pursuant to this Court's Rule 29.2, the undersigned counsel of record for *amicus curiae* certifies that the following additional persons and entities have an interest in the outcome of this case:

1. Surveillance Technology Oversight Project, *amicus curiae*. *Amicus curiae* is a nonprofit organization recognized as tax exempt under Internal Revenue Code § 501(c)(3). It has no parent corporation and no publicly held corporation owns 10 percent or more of its stock.

2. Darío Maestro, attorney for *amicus curiae*.

Dated: June 24, 2026                    /s/ *Darío Maestro*
                                        Darío Maestro

                                        *Counsel for Amicus Curiae*

i

**TABLE OF CONTENTS**

STATEMENT OF INTERESTED PARTIES ...............................................................i

TABLE OF CONTENTS ................................................................................. ii

TABLE OF AUTHORITIES ............................................................................ iii

STATEMENT OF INTEREST OF *AMICUS CURIAE* ...........................................1

SUMMARY OF ARGUMENT ..........................................................................2

ARGUMENT ...............................................................................................4

    I.     APP STORE OWNERS AND APP DEVELOPERS CANNOT COMPLY WITH BOTH S.B. 2420 AND THE CHILDREN'S ONLINE PRIVACY PROTECTION ACT. .................................................. 4

        A.   S.B. 2420 Compels the Disclosure of Children's Personal Information that COPPA Permits Only with Verifiable Parental Consent. ............................................................................ 5

        B.   S.B. 2420 Strips Parents of the Tiered Consent, Deletion, and Anti-Conditioning Rights COPPA Guarantees. ........................... 10

    II.    APP STORE OPERATORS AND DEVELOPERS ALSO CANNOT COMPLY WITH BOTH S.B. 2420 AND THE TEXAS DATA PRIVACY AND SECURITY ACT. ......................................................... 12

CONCLUSION ..........................................................................................15

CERTIFICATE OF COMPLIANCE ..................................................................16

CERTIFICATE OF SERVICE ........................................................................17

## TABLE OF AUTHORITIES

**Cases**

*Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–43 (1963) .......7

*Mutual Pharm. Co. v. Bartlett*, 570 U.S. 472, 480 (2013) ........................7

*PLIVA, Inc. v. Mensing*, 564 U.S. 604, 618 (2011) ...................................7

**Statutes and Rules**

16 C.F.R. § 312.2.............................................................................4, 5

16 C.F.R. § 312.5(a). ....................................................................5, 9, 11

16 C.F.R. § 312.5(a)(1)........................................................................5

16 C.F.R. § 312.5(a)(2)......................................................................10

16 C.F.R. § 312.6(a)(2)......................................................................10

16 C.F.R. § 312.7.............................................................................10

16 C.F.R. § 312.10.............................................................................9

Tex. Bus. & Com. Code Ann. § 121.021(a). .............................................8

Tex. Bus. & Com. Code Ann. § 121.022(b)(2). .......................................13

Tex. Bus. & Com. Code Ann. § 121.024................................................6

Tex. Bus. & Com. Code Ann. § 121.025(1). ...........................................12

Tex. Bus. & Com. Code Ann. § 121.054..............................................8, 9

Tex. Bus. & Com. Code Ann. § 121.055(b). ............................................9

Tex. Bus. & Com. Code Ann. § 541.001(19). .........................................12

Tex. Bus. & Com. Code Ann. § 541.001(28). .........................................................14

Tex. Bus. & Com. Code Ann. § 541.001(6). ...........................................................14

Tex. Bus. & Com. Code Ann. § 541.001(8) .............................................................12

Tex. Bus. & Com. Code Ann. § 541.005....................................................................12

Tex. Bus. & Com. Code Ann. § 541.051(b)(3). ........................................................14

Tex. Bus. & Com. Code Ann. § 541.101(a)(1)...........................................................12

Tex. Bus. & Com. Code Ann. § 541.101(b)(1) ..........................................................13

**Other Authorities**

*Age requirements on Google Accounts*, Google Account Help,

  https://support.google.com/accounts/answer/1350409?sjid=15511012997348403

  563-NC#zippy= (last visited June 18, 2026) ......................................................6

*Changes to Google Play for upcoming app store bills for users in applicable US*

  *states*, Play Console Help, https://support.google.com/googleplay/android-

  developer/answer/16569691?hl=en .....................................................................6

*Create an Apple Account for your child*, Apple Support (June 1, 2026)

  https://support.apple.com/en-us/102617 .............................................................5

Electronic Frontier Foundation, *Zero-Knowledge Proofs Are Not A Solution to Age-*

  *Gating Mandates*, https://www.eff.org/pages/zero-knowledge-proofs-are-not-

  solution-age-gating-mandates ..............................................................................9

Eric Rescorla et al., *Age Assurance Online: A Technical Assessment of Current Systems and Their Limitations*, Knight-Georgetown Inst. (Jan. 29, 2026), https://kgi.georgetown.edu/research-and-commentary/age-assurance-online/ ............................................................................................................8

Jason Kelley and Adam Schwartz, *Age Verification Mandates Would Undermine Anonymity Online*, Electronic Frontier Foundation (March 10, 2023), https://www.eff.org/deeplinks/2023/03/age-verification-mandates-would-undermine-anonymity-online..............................................................................8

*Next steps for apps distributed in Texas*, Apple: Developer News, (Nov. 4, 2025) https://developer.apple.com/news/?id=2ezb6jhj ....................................................6

Steven M. Bellovin, *Privacy-Preserving Age Verification—and Its Limitations*, IAB/W3C Workshop on Age-Based Restrictions on Content Access (Oct. 2025), https://www.cs.columbia.edu/~smb/papers/age-verify.pdf........................8

Coders Stop, *Third-Party ID Verification Hubs Are Becoming the Most Dangerous Single Points of Failure on the Internet, and Nobody Is Regulating Them*, Medium (May 29, 2026), https://medium.com/@coders.stop/third-party-id-verification-hubs-are-becoming-the-most-dangerous-single-points-of-failure-on-the-e79b07b58493...............................................................................................8

**STATEMENT OF INTEREST OF *AMICUS CURIAE*[1]**

The Surveillance Technology Oversight Project ("S.T.O.P.") is a non-profit civil rights organization based in New York. It was founded in 2019 to promote community freedom by ending systems of mass surveillance, advocating in courts and legislatures nationwide to ensure that technology serves the public without sacrificing privacy. S.T.O.P. is dedicated to protecting the privacy rights of all technology users and has extensive experience in cases concerning data security, surveillance, online safety, and especially the privacy risks of age verification.

S.T.O.P. regularly participates as *amicus* before courts to advocate for these rights, including in cases concerning the privacy interests held in sensitive personal and location data. *See, e.g.*, Br. of S.T.O.P. et al. as *Amici Curiae*, *Chatrie v. United States*, No. 25-112 (U.S. Feb. 27, 2026) (urging the Supreme Court to hold that geofence warrants violate the Fourth Amendment); Br. of S.T.O.P. as *Amicus Curiae*, *Wheely USA, Inc. v. City of New York*, No. 1:26-cv-01057 (S.D.N.Y. Mar. 9, 2026) (challenging New York City rules that require for-hire-vehicle operators to report passengers' precise trip location data); Br. of S.T.O.P. as *Amicus Curiae*, *Commonwealth v. Perry*, 489 Mass. 436 (2022) (concerning cell tower dump

---

[1] No party's counsel authored this brief in whole or in part; no party or party's counsel contributed money that was intended to fund preparing or submitting this brief; and no person other than *amicus curiae*, its members, and its counsel contributed money that was intended to fund preparing or submitting this brief.

warrants). S.T.O.P. has also advised regulators implementing age-verification requirements on the limits of commercially available solutions, which cannot confirm a user's age without collecting sensitive personal data.

## SUMMARY OF ARGUMENT

The privacy and management of personal data are real and pressing concerns for Americans. S.T.O.P. has fought to protect that data throughout its history and litigates cases concerning the privacy of sensitive personal and location data. We also recognize that companies' data practices sometimes stand contrary to the privacy and safety of their users—children most of all. S.T.O.P. therefore supports generally applicable privacy regulations aimed at protecting children online. It is concerned, however, that S.B. 2420 pursues that goal by compelling the aggregation of more personal data which existing privacy law restricts. For that reason, *amicus* respectfully recommends that the Court address a question the parties' briefing has largely passed over: whether S.B. 2420 can be reconciled with the federal and state data privacy laws that already govern the entities it regulates.

S.T.O.P. agrees with Plaintiff-Appellees that S.B. 2420 cannot stand, and writes to explain a distinct reason why. The statute does not write on a clean slate. It regulates app store owners who are already bound by a dense body of federal and state privacy laws, and it directs them to do the very things such laws forbid. Every category of personal data S.B. 2420 forces app store owners to collect and pass to

2

developers deepens the conflict with privacy statutes that bar such transfers—making compliance with both laws impossible to achieve. Covered entities have built their data practices around the consent and opt-out rights that federal and state law guarantee. There is no reason to expect they can honor those rights while carrying out S.B. 2420's contrary demands. The statute is, at least in this respect, impossible to obey.

S.B. 2420 compels app store owners to disclose users' personal information to all app developers, effectively prevents parents from opting out of the disclosure of their young children's data, and conditions the download and use of an application on the surrender of that information. These requirements conflict with the Children's Online Privacy Protection Act ("COPPA"), the longstanding federal law enacted to protect children accessing the internet. COPPA rests on verifiable parental consent in addition to a parent's continuing right to control what data is collected from their child and to refuse its further disclosure. S.B. 2420 takes that control away, releasing children's personal data to developers regardless of parental consent. Consequently, an app store owner cannot both honor a parent's rights under COPPA and carry out S.B. 2420's mandates.

The conflict with Texas's own law is just as direct. The Texas Data Privacy and Security Act ("TDPSA") gives Texans the right to control, and to opt out of, the sharing of their personal data. S.B. 2420 requires the opposite. It mandates the

3

collection and disclosure of every app store user's age and appears to grant developers ongoing access to that information. What one Texas law protects, the other would override.

In assessing whether S.B. 2420 can stand, the Court should not overlook its conflict with the consumer privacy laws already governing covered entities. S.B. 2420 cannot be obeyed without violating COPPA, and under the Supremacy Clause that conflict must be resolved in favor of federal law. S.B. 2420 likewise cannot be reconciled with Texas's own guarantee that consumers control the sharing of their data. Because S.B. 2420 cannot operate consistently with the federal and state privacy statutes already in force, it should yield.

## ARGUMENT

### I.   APP STORE OWNERS AND APP DEVELOPERS CANNOT COMPLY WITH BOTH S.B. 2420 AND THE CHILDREN'S ONLINE PRIVACY PROTECTION ACT.

Since going into effect in 2000, COPPA has required online operators[2] to take special care in protecting the personal data of children under the age of thirteen. It does so by prohibiting the collection, use, and disclosure of certain types of personal data absent verifiable parental consent. COPPA enumerates eleven

---

[2] Defined by COPPA as "any person who . . . offers products or services for sale through [a] website or online service[.]" 16 C.F.R. § 312.2. This term as used in COPPA therefore clearly covers app store owners and developers.

categories of protected data including names, email addresses, and any persistent identifier that can be used to track a user across different online services. While age is not specifically protected, any information about a child that is combined with any of the listed identifiers is.[3] This means if a covered user's age category is presented alongside any other personally identifiable characteristic, the age category is protected by COPPA. Since creating an account with an app store necessarily involves sharing the user's name, birthdate, and possibly other identifying information, app store owners (and likely app developers) will have access to children's age ranges plus at least some other identifying information. Age ranges held by ASOs, and by the developers they share user data with, are therefore COPPA-protected personal information.

### A. S.B. 2420 Compels the Disclosure of Children's Personal Information That COPPA Permits Only with Verifiable Parental Consent.

Under COPPA, operators must obtain verifiable parental consent before they use, collect, or disclose children's personal information. 16 C.F.R. § 312.5(a)(1). In complying with COPPA, app store owners[4] ("ASOs") require parents to create an app store account on behalf of their child when the child is under the age of

---

[3] *See* 16 C.F.R § 312.2 (definition of "personal information" includes "Information concerning the child or the parents of that child that the operator collects online from the child and combines with an identifier described in this definition.").

[4] This brief uses the "app store owner" language from S.B. 2420 to refer to the entities that COPPA calls "operators" and the TDPSA calls "controllers."

thirteen.[5] This ensures that a parent is aware of and consents to the creation of the child's account (which inevitably includes consenting to disclosure of the child's birthdate to the ASO since it is required to create the account), but any subsequent disclosure of the child's data will require renewed consent from the parent.

S.B. 2420 directly conflicts with COPPA by requiring ASOs to grant app developers access to "current information related to" each user's age category and parental consent information. Tex. Bus. & Com. Code Ann. § 121.024. Given that S.B. 2420 imposes no limitation or qualification on a developer's access to this protected information, and that ASOs must provide *current* age and consent information, this unmitigated access is presumably granted immediately upon the creation of a child's account.[6] As such, the mandated disclosure is a facial violation of COPPA's requirement to obtain parental consent before a child's protected personal information is collected, used, or disclosed. In creating a child's app store

---

[5] *See e.g.*, *Create an Apple Account for your child*, Apple Support, (June 1, 2026) https://support.apple.com/en-us/102617; *Age requirements on Google Accounts*, Google Account Help, https://support.google.com/accounts/answer/1350409?sjid=15511012997348403563-NC#zippy= (last visited June 18, 2026).

[6] *See, e.g., Next steps for apps distributed in Texas*, Apple: Developer News, (November 4, 2025) https://developer.apple.com/news/?id=2ezb6jhj ("Age categories for users with new Apple Accounts in Texas as of January 1, 2026, will be shared with a developer's app *when they request it*.") (emphasis added); *Changes to Google Play for upcoming app store bills for users in applicable US states*, Play Console Help, https://support.google.com/googleplay/android-developer/answer/16569691?hl=en ("[Y]our app is able to receive users' age verification or supervision status, age ranges, and other applicable signals.")

account, a parent is voluntarily sharing the child's information with the ASO, *not* every developer on the app store.

To follow COPPA, ASOs must therefore obtain parental consent before disclosing the child's age category information to developers. But to be in compliance with S.B. 2420, ASOs must allow developers free access to the same information regardless of parental consent. An ASO subject to both faces an irreconcilable choice. That is the classic occasion for conflict preemption, for it is impossible for a regulated party to obey federal law without violating the state statute. Declining to find preemption here would repeat the error the Supreme Court corrected in *Mensing*, where two circuits were reversed for failing to see that dual compliance was impossible. *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 618 (2011) (finding preemption because "state and federal law conflict where it is impossible for a private party to comply with both state and federal requirements") (internal quotation marks omitted); *see also Mutual Pharm. Co. v. Bartlett*, 570 U.S. 472, 480 (2013) (reversing the First Circuit and holding state law preempted where federal law forbids what state law requires); *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–43 (1963) ("A holding of federal exclusion of state law is inescapable … where compliance with both federal and state regulations is a physical impossibility for one engaged in interstate commerce").

7

Even if ASOs were entitled to freely share children's protected information with developers, S.B. 2420 would still conflict with COPPA by requiring developers to verify the age and consent information for each app's users.[7] Bus. & Com. § 121.054. While ASOs like Apple and Google may have the resources to check users' ages in-house, many app developers will not. Thus, under S.B. 2420, these developers will be compelled to outsource the age verification process to a third-party vendor, violating COPPA by adding another layer of disclosure and increasing the chances of a privacy breach.[8]

Despite arguments advanced by other *amici*, truly private and secure methods of age verification are not widely available.[9] But even if a sufficiently

---

[7] This is in addition to the ASO's requirement to do the same upon account creation, *see* Bus. & Com. § 121.021(a).

[8] *See, e.g.,* Jason Kelley and Adam Schwartz, *Age Verification Mandates Would Undermine Anonymity Online*, Electronic Frontier Foundation (March 10, 2023), https://www.eff.org/deeplinks/2023/03/age-verification-mandates-would-undermine-anonymity-online ("Users are forced to trust that the website they visit, or its third-party verification service, both of which could be fly-by-night companies with no published privacy standards, are following these rules [regarding limitations on retention and disclosure of data]."); Coders Stop, *Third-Party ID Verification Hubs Are Becoming the Most Dangerous Single Points of Failure on the Internet, and Nobody Is Regulating Them*, Medium (May 29, 2026), https://medium.com/@coders.stop/third-party-id-verification-hubs-are-becoming-the-most-dangerous-single-points-of-failure-on-the-e79b07b58493 (discussing identity verification vendors' failures to protect personal information).

[9] *See* Eric Rescorla et al., *Age Assurance Online: A Technical Assessment of Current Systems and Their Limitations*, Knight-Georgetown Inst. (Jan. 29, 2026), https://kgi.georgetown.edu/research-and-commentary/age-assurance-online/ (concluding that the most common commercial systems require the user to disclose identifying information or a facial image and to "trust the [age-verification

secure age verification method *did* exist, S.B. 2420 contains no requirement that developers use it. It merely directs developers to "create and implement a system" that uses the age and parental consent information received from ASOs to verify each—not only minors—user's age. Bus. & Com. § 121.054. This leaves the door open for developers to create and haphazardly implement verification systems that expose both children's and adults' personal information.

COPPA and S.B. 2420 also differ in data retention requirements. S.B. 2420 requires developers to delete personal data once they have verified users' age and parental consent. Bus. & Com. § 121.055(b). COPPA prohibits retaining a child's personal information indefinitely, but an operator may retain the data for as long as is necessary to effectuate the purpose for which it was collected. 16 C.F.R. § 312.10. Thus, since S.B. 2420 requires immediate deletion following verification while COPPA permits retaining a child's personal information as long as the

---

provider] not to misuse their data"); Steven M. Bellovin, *Privacy-Preserving Age Verification—and Its Limitations*, IAB/W3C Workshop on Age-Based Restrictions on Content Access (Oct. 2025), https://www.cs.columbia.edu/~smb/papers/age-verify.pdf (explaining that privacy-preserving age verification methods face significant practical limitations and are not deployed at scale); *see also* Electronic Frontier Foundation, *Zero-Knowledge Proofs Are Not A Solution to Age-Gating Mandates*, https://www.eff.org/pages/zero-knowledge-proofs-are-not-solution-age-gating-mandates (explaining that even the most privacy-protecting systems are not guaranteed to keep information private because they can be linked to other identifiable characteristics).

operator needs to keep requesting parental consent, it is impossible for a developer to comply with state law while still exercising its retention right under federal law.

### B. S.B. 2420 Strips Parents of the Tiered Consent, Deletion, and Anti-Conditioning Rights COPPA Guarantees.

By requiring automatic disclosure of children's personal information from ASOs to developers, S.B. 2420 takes away parental autonomy that is guaranteed by COPPA. COPPA lets parents consent to the use and collection of their child's personal information while also withholding consent to its disclosure. 16 C.F.R. § 312.5(a)(2). A parent or guardian who permits an ASO to collect their child's age when creating an app store account is not thereby required to consent to it being further divulged to app developers — a right that S.B. 2420 simply disregards. COPPA also entitles parents to demand deletion of their child's data. 16 C.F.R. § 312.6(a)(2). S.B. 2420 makes that right illusory: because the child's age category is tied to the account, it remains perpetually available to developers, even if not formally retained by them. However framed, S.B. 2420 cannot be squared with COPPA. COPPA's tiered consent scheme preserves parental control over who may access a child's information, yet S.B. 2420 purports to honor that control while taking it away.

Further, COPPA prohibits an operator from conditioning a child's participation on disclosure of personal information that is not reasonably necessary. 16 C.F.R. § 312.7. Under S.B. 2420, disclosure of the child's birthdate to app developers is

10

undeniably a condition of participating in the offerings of the app store as S.B. 2420 affords no opportunity for a parent to deny developers' access to their child's age category information. And blanket disclosure of a child's age category to every app developer is not "reasonably necessary" to that participation. A parent's consent to create an app store account does not require handing the child's information to a universe of third parties. The operator could verify age itself, or condition disclosure on the parent's separate consent, without conscripting every developer into the transaction.

Thus, S.B. 2420 impermissibly conditions the use of the app store and the apps contained therein on a parent's willingness to share their child's personal information with every developer on the app store. This lessens the control parents have over how their child uses a phone because it forces an all-or-nothing disclosure regime: either make your child an app store account and simultaneously share their age information with all app developers, or bar the child from having a phone with an app store. COPPA, by centering control over children's data into the hands of their parents, ensures the preservation of both children's safety and parental autonomy. The same cannot be said for S.B. 2420.

11

## II.   APP STORE OPERATORS AND DEVELOPERS ALSO CANNOT COMPLY WITH BOTH S.B. 2420 AND THE TEXAS DATA PRIVACY AND SECURITY ACT.

The TDPSA regulates the use of all consumers' personal data by business entities operating in Texas. It grants consumers the right to review how their data is used, requires operators to limit data collection to only what is necessary, and imposes standards on how data is used. Like COPPA, the TDPSA does not specifically protect age but covers any category of data that can be reasonably linked to information that permits an operator to identify a person. For children under thirteen, the TDPSA incorporates COPPA's parental consent standard wholesale. Tex. Bus. & Com. Code Ann. § 541.005. The preceding discussion of parental consent thus applies with equal force here. Children aged thirteen and over receive the same protections as adults under the TDPSA.

The TDPSA confines a controller's[10] personal data[11] collection to what is "adequate, relevant, and reasonably necessary" for the purpose disclosed to the consumer. Bus. & Com. § 541.101(a)(1). S.B. 2420 sweeps more broadly, requiring an ASO to collect whatever it needs to verify age and parental consent,

---

[10] Defined by TDPSA as a party who "determines the purpose and means of processing personal data," thus applying to both ASOs and developers. Bus. & Com. § 541.001(8).

[11] Defined by TDPSA as "any information . . . that is linked or reasonably linkable to an identified or identifiable person." Bus. & Com. § 541.001(19).

and to do so for *every* user, not merely minors and their guardians. Bus. & Com. § 121.025(1). But the purpose of that collection is to secure parental consent to a child's use of an app. Collecting, and automatically disclosing, the data of adults not raising children serves no part of that purpose, and so exceeds what is "adequate, relevant, and reasonably necessary" to achieve it.

S.B. 2420 also requires ASOs to verify that the adult connected to a minor's account "has legal authority" over the child. Bus. & Com. § 121.022(b)(2). It permits an ASO to use a commercially reasonable method to do this but offers no further guidance and never defines what adequate verification entails. Because the adult's age is already known from account creation, the open question is how an ASO is to confirm legal authority over the child. Two paths present themselves: *first*, the ASO might let the parent check a box attesting to the relationship; or, *second*, it might demand that the parent submit private documentation proving the relationship. Either way, S.B. 2420 requires a degree of disclosure outside of the scope allowed by the TDPSA, and simultaneous compliance is impracticable.

Moreover, the TDPSA requires a controller to disclose the purpose for its collection and then bars any use beyond that purpose. Bus. & Com. § 541.101(b)(1). In theory, an ASO might reconcile with S.B. 2420 by adding a clause to its terms of use describing the collection and use of age and parental-consent data, so that assent to the terms doubles as consent under the statute. But

13

the TDPSA demands more. Consent must be an affirmative act signifying *specific* agreement to the planned use; and the statute expressly refuses to find it in acceptance of "general or broad terms of use . . . that contains descriptions of personal data processing along with other, unrelated information." Bus. & Com. § 541.001(6). Thus, S.B. 2420's automatic disclosure to developers of each user's age category information would have to be unambiguously explained to each consumer in a notice separate from the app store's terms of use, to which each consumer affirmatively agrees. This is not impossible to achieve. But it is, contrary to several *amici*'s theories, a new duty the statute imposes on ASOs.

Finally, the TDPSA entitles consumers to demand deletion of their data. Bus. & Com. § 541.051(b)(3). They may also be entitled to opt out of having their data disclosed to developers altogether.[12] As noted above, even if requested, it is not possible for an ASO to delete a consumer's age category data because that information is inextricably linked to their account. Opting out is equally impossible under S.B. 2420 due to its mandatory disclosure of age category information from ASOs to developers. Access to app store accounts for Texas consumers of all ages

---

[12] The TDPSA allows consumers to opt out of the sale of their personal data (defined as sharing, disclosing or transferring of personal data to a third party for some valuable consideration, Bus. & Com. § 541.001(28)). If the terms of the relationship between ASOs and developers meet this definition, consumers subject to the TDPSA are entitled to opt out of disclosure of their information to developers.

14

is therefore effectively conditioned on their acceptance of the terms of S.B. 2420: a law meant to protect children's data that ultimately serves to increase consumers' exposure to privacy harms. Under the S.B. 2420 regime, developers gain constant access to protected information, and consumers are left to acquiesce or abandon the internet altogether.

## CONCLUSION

By enacting S.B. 2420, the Texas legislature has made it impossible for app store operators and developers to comply with the federal and state laws that already protect consumers' data. The conflicts between S.B. 2420 and COPPA as well as S.B. 2420 and the TDPSA are not easily overcome and will inevitably expose ASOs and developers to new potential liabilities. Additionally, S.B. 2420 strips parents of control over how their young children's data is used and simultaneously hands a child's age—and every other piece of information tied to that child's account—to a wider audience of developers, where it is one breach away from exploitation. For these reasons, and those presented by the Plaintiff-Appellees, *amicus* urges the Court to affirm and permanently strike down S.B. 2420.

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), I certify as follows:

1. This Brief of *Amicus Curiae* the Surveillance Technology Oversight Project in Support of Plaintiff-Appellees complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 3,642 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f); and

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word, in 14-point Times New Roman font.

Dated: June 24, 2026                    /s/ *Darío Maestro*
                                        Darío Maestro

                                        *Counsel for Amicus Curiae*

16

## CERTIFICATE OF SERVICE

I hereby certify that on June 24, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will provide electronic notice and an electronic link to this document to all attorneys of record.

Dated: June 24, 2026

/s/ *Darío Maestro*
Darío Maestro

*Counsel for Amicus Curiae*

17